[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-13853
_____

D.C. Docket No. 4:12-cv-00218-HLM


ENORA PEREZ,
d.b.a. Perez Center,

Counter Defendant
Plaintiff - Appellant,

versus

WELLS FARGO N.A.,

Counter Claimant
Defendant - Appellee,

FIRST JOHN DOE THROUGH
TENTH JOHN DOE,
inclusive,

Defendant - Appellee,

UNITED STATES OF AMERICA,

Third Party Defendant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(December 18, 2014)

Before WILSON and ROSENBAUM, Circuit Judges, and SCHLESINGER,[*] District Judge.

ROSENBAUM, Circuit Judge:

A "[r]ose is a rose is a rose is a rose."[1]   And a motion for an entry of default judgment is a motion for an entry of default judgment is a motion for an entry of default judgment is a motion for an entry of default judgment—even if its writer calls it a motion for judgment on the pleadings.  So Rule 55's standard of "good cause" for setting aside an entry of default judgment—not the higher one of "excusable neglect" applicable to missed deadlines outside the default context— governs the court's determination of whether, despite her one-time error in not responding to a pleading, the non-moving party should get the opportunity to have her case considered on the merits before final judgment against her is entered.

In this case, Defendant-Counterclaimant Wells Fargo, N.A. (Wells Fargo), in its so-called "motion for judgment on the pleadings," urged the court to apply the excusable-neglect standard to preclude Plaintiff-Counter-defendant Enora

_____

[*] Honorable Harvey E. Schlesinger, United States District Judge for the Middle District of Florida, sitting by designation.

[1] Gertrude Stein, Geography and Plays 187 (The Four Seas Press 1922) (1913).

2

Perez from filing an answer to Wells Fargo's counterclaim after Perez missed a single deadline to respond to the counterclaim. Then, because Perez had not been permitted to file her answer, Wells Fargo argued that the court should deem Wells Fargo's allegations in its counterclaim admitted and enter judgment in Wells Fargo's favor (a default judgment by any other name).[2] The court granted Wells Fargo's motion, effectively entering what amounted to a default judgment against Perez.

But process matters. And we have a strong preference for deciding cases on the merits—not based on a single missed deadline—whenever reasonably possible. So the order granting judgment on the pleadings and denying Perez the opportunity to file an answer to Wells Fargo's counterclaim must be reversed, and Perez must be given a chance to demonstrate that she should have her case considered on the merits. We also conclude that the district court's order denying Perez's motion to amend her complaint must be reversed.

## I.

Perez's complaint alleges that she owned and operated her own business called Perez Center.[3] In connection with her business, in May 2012, Perez opened

---

[2] *Cf.* William Shakespeare, "Romeo and Juliet," act 2, sc. 2 ("a rose by any other name would smell as sweet").

[3] According to a brief that Perez filed in the district court in support of her motion to file an out-of-time answer to Wells Fargo's counterclaim, Perez Center was a grocery store that

3

three accounts with Wells Fargo:  a "Gold Business Services Package Account," a "Wells Fargo Simple Business Checking Account," and a "Business Market Rate Savings Account."  She used the money that she deposited into these business accounts to support her family and to continue the operation of Perez Center.

By letter dated June 19, 2012, though, Wells Fargo informed Perez that it had blocked all monetary transactions on Perez's accounts and had deactivated the ATM cards linked to the accounts because Wells Fargo had made a "business decision to end [Perez's] deposit account relationship."  Wells Fargo provided no further explanation for why it had closed Perez's accounts.  At the time, Perez's three accounts held a combined almost $100,000.00.

In response to the letter, Perez made numerous calls to Wells Fargo to find out why Wells Fargo had closed her accounts and to try to obtain her money.  But, according to Perez, Wells Fargo would not provide Perez with "any plausible explanation of why [her] bank accounts . . . were closed," and it refused to return the money in her accounts.  So Perez filed suit against Wells Fargo in the Superior Court of Floyd County, Georgia, seeking injunctive and monetary relief.

Wells Fargo then removed this action to federal court on the basis of diversity jurisdiction. In federal court, Wells Fargo filed its answer and affirmative

---

"cater[ed] to Hispanic shoppers selling food items native to the countries of origin of Hispanics who have immigrated to the Chattooga County area."

defenses and included a counterclaim against Perez and a claim against the United States for interpleader.[4]  Wells Fargo alleged in its counterclaim that it had closed and frozen Perez's accounts after several United States Treasury checks had been deposited into them.  According to the counterclaim, the contractual agreement between Wells Fargo and Perez allowed Wells Fargo to take these actions because depositing Treasury checks constituted money services business (MSB) activity, and Perez's accounts were "not approved for [ ] 'MSB' activity."  Wells Fargo did not quote the contract or attach a copy of it to the counterclaim but instead simply characterized it.

The counterclaim further averred that about six weeks after it had frozen and closed Perez's accounts, on August 7, 2012, Wells Fargo had received a letter from the Internal Revenue Service (IRS) notifying Wells Fargo that it had "issued tax refunds that it should not have issued" and that it claimed an interest in the funds in Perez's accounts.  This IRS letter is the only communication of any kind between Wells Fargo and the IRS that the counterclaim alleges.  Because, in light of the August 7, 2012, IRS letter, Perez and the United States both claimed rights to the funds, Wells Fargo explained, it filed the counterclaim for interpleader to resolve the dispute.  Finally, the counterclaim sought "litigation costs and attorneys' fees" from Perez, the United States, or both.

---

[4] For the sake of simplicity, we refer to the counterclaim against Perez and the claim against the United States for interpleader as the "counterclaim."

In response to Wells Fargo's counterclaim, the United States filed an answer repudiating any interest in the funds in Perez's accounts and requesting that the court deny the requested relief. Although the United States admitted that the IRS had sent the August letter to Wells Fargo claiming an interest in the funds in Perez's accounts, it stated that, upon further examination, the IRS had determined that the United States had "no right" to the funds in Perez's accounts.

So, nearly six months after it originally froze Perez's bank accounts and six weeks after the United States disclaimed any interest in the funds in Perez's accounts, on December 14, 2012, Wells Fargo returned to Perez part of the monies in Perez's accounts. Specifically, Wells Fargo tendered a check to Perez in the amount of $88,770.99—keeping about $10,000.00 for itself for "costs" and "attorneys' fees" incurred in freezing and closing Perez's accounts and in defending against Perez's attempts to get her money back.[5] By stipulation, the United States was dismissed from the case. Perez did not respond to the counterclaim.

When Perez did not file a response to Wells Fargo's counterclaim, Wells Fargo moved under Federal Rule of Civil Procedure 12(c) for judgment on the pleadings. In support of its motion, Wells Fargo argued that the court should deem

---

[5] Before the court entered its order, Wells Fargo returned $88,770.99 to Perez but retained $10,130.64 to cover its attorney's fees. Because Wells Fargo concedes Perez's entitlement to the funds in her account, the parties agree that her claim for injunctive relief is now moot.

6

admitted all of its allegations in the counterclaim since Perez had not filed a timely response to the pleading. Once deemed admitted, Wells Fargo asserted, the allegations in the counterclaim established that Perez's claim for wrongful closure of her accounts and withholding of her funds necessarily failed as a matter of law. Wells Fargo reasoned that, under the deemed-admitted allegations of the counterclaim, the contract governing Perez's accounts entitled Wells Fargo to freeze Perez's accounts since, in Wells Fargo's view, Perez had used her accounts for MSB activity, and her accounts were not approved for that purpose.

Perez timely filed a response to Wells Fargo's motion for a Rule 12(c) judgment on the pleadings and requested leave to file an out-of-time answer to the counterclaim. Although no default had been entered against Perez, she argued that not permitting her to respond out of time and instead deeming the allegations of the counterclaim admitted in ruling on the motion for judgment on the pleadings would be tantamount to entering a default against her.

So Perez urged the court to invoke Rule 55 and asserted that good cause existed to allow her to file an answer. Perez averred that her failure to answer was neither willful nor culpable but rather resulted from her attorney's mistake. As Perez explained the circumstances, she originally had filed her action in Georgia state court, where her attorneys were accustomed to practicing, and Georgia does not require the filing of an answer to a counterclaim. Perez also contended that she

sought leave to file her response soon after the error was brought to her attention and that Wells Fargo would suffer no prejudice by allowing her to answer. In addition, Perez urged that, even in the absence of a response to the counterclaim, her complaint contained sufficient facts to rebut Wells Fargo's allegations. Perez also separately filed a motion for leave to amend her complaint, seeking relief specifically for breach of contract, conversion, and negligence.

The district court denied Perez's motion to file an answer to the counterclaim. Applying Rule 6(b)(1)(B)'s "excusable neglect" standard, the district court concluded that even if Perez had not acted culpably and Wells Fargo faced little prejudice if Perez were provided with an opportunity to respond, Perez nonetheless had failed to show excusable neglect because her attorney's proffered reason for the delay in filing was insufficient to relieve Perez of the consequences of the missed deadline.

Then, because Perez had not timely filed a response to the counterclaim, the district court deemed admitted the allegations in the counterclaim and relied on them in evaluating Wells Fargo's motion for judgment on the pleadings. The district court determined that Wells Fargo was entitled to judgment as a matter of law on its counterclaim because, under the deemed-admitted allegations of the counterclaim, the Business Account Agreement, as characterized by Wells Fargo in its counterclaim, authorized Wells Fargo to close Perez's accounts and freeze

the monies within them.  The district court did not consider the language of the actual Business Account Agreement.

With respect to Perez's complaint, the district court again invoked the counterclaim's deemed-admitted characterization of the Business Account Agreement as having authorized Wells Fargo's actions in closing Perez's accounts to find that Perez could not plausibly argue—as her complaint alleged—that Wells Fargo's actions were wrongful or unlawful.  As a result, the district court also determined that Wells Fargo was entitled to judgment on the pleadings on Perez's complaint.

Additionally, the district court denied Perez's motion to amend.  Relying for the third time on the deemed-admitted counterclaim characterization of the Business Account Agreement as having authorized Wells Fargo to freeze the funds in Perez's accounts, the court concluded that no amendment of the complaint could enable Perez to establish that Wells Fargo's actions were wrongful.  Therefore, the court determined that any amendment of the complaint would be futile.

The district court then directed Wells Fargo to file an affidavit detailing the attorney's fees and expenses it had incurred.  In ruling on the issue of attorney's fees, the district court did not permit Perez to argue Wells Fargo's entitlement to fees.  Rather, relying on the fact that the Business Account Agreement contains an attorney's fees provision, it determined that Wells Fargo could recover its litigation

9

expenses.  The district court focused on only the amount that Wells Fargo was allegedly owed under the Business Account Agreement.  After determining the applicable rates and hours worked, the district court found that Wells Fargo was entitled to $9,955.00 in fees and costs and ordered Wells Fargo to return $175.64 to Perez.

## II.

In this appeal, Perez raises three issues: (1) whether Wells Fargo's motion for judgment on the pleadings should have been granted, (2) whether Perez's motion to file an amended complaint should have been denied on futility grounds, and (3) whether the district court's award of attorney's fees was proper.  We address each question in turn.

### A.  Wells Fargo's Motion for Judgment on the Pleadings

We review *de novo* an order granting judgment on the pleadings.  *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001).  "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law."  *Id.*  In determining whether a party is entitled to judgment on the pleadings, we accept as true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party.  *See Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).  If a comparison of the

averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied. *See Stanton v. Larsh*, 239 F.2d 104, 106 (5th Cir. 1956).[6]

In considering Wells Fargo's motion for judgment on the pleadings, the district court first denied Perez's motion to file an out-of-time answer to Wells Fargo's counterclaim because it concluded that Perez had failed to establish "excusable neglect" for not timely filing her answer. As a result, no answer to Wells Fargo's counterclaim existed, so the district court deemed admitted all of the allegations in Wells Fargo's counterclaim when it considered Wells Fargo's motion for judgment on the pleadings.

This was error for two reasons: First, by taking as true all of the allegations in the counterclaim for purposes of considering the motion for judgment on the pleadings as it pertained to the counterclaim, the district court essentially conducted the analysis for determining whether a motion for default judgment should be granted after the clerk of court has entered a default under Rule 55. So it was necessary to evaluate whether Perez could file an out-of-time answer under Rule 55(c)'s standard for setting aside the clerk of court's default. Second, even if Wells Fargo's motion could have been properly considered as a motion for

---

[6] Opinions of the Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

judgment on the pleadings, Wells Fargo's characterization of the Business Account Agreement as having fully authorized Wells Fargo's actions and its entitlement to attorney's fees and costs, which drove the entry of judgment on the pleadings for Wells Fargo, was a legal conclusion not amenable to being deemed admitted. We discuss each issue in turn.

**1.**

Once the district court denied Perez's motion to file an answer to the counterclaim out of time and accordingly deemed admitted the allegations in the counterclaim, the court essentially conducted the analysis applicable on a motion for default judgment following the entry of a clerk's default under Rule 55, not the analysis applicable on a motion for judgment on the pleadings. A comparison of the rule governing a motion for default judgment with the rule pertaining to a motion for judgment on the pleadings shows why this is so.

Rule 55, governing "Default; Default Judgment," applies specifically to situations where the defendant or counter-defendant has failed to answer. Subsection (a) provides, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "Rule 55 . . . appl[ies] . . . where only the first step has been taken—i.e., the filing of a complaint—[because] the court thus has only allegations and no

12

evidence before it." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006) (internal citation omitted). As the Second Circuit has explained, "Rule 55 tracks the ancient common law axiom that a default is an admission of all well-pleaded allegations against the defaulting party." *Id.* (citation and internal quotation marks omitted).

Federal Rule of Civil Procedure 12(c), "Motion for Judgment on the Pleadings," on the other hand, provides "a means of disposing of cases when . . . a judgment on the merits can be achieved by focusing on the content of the *competing* pleadings . . . ." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367 (3d ed. 2004) (emphasis added). When only a single pleading has been filed, "competing pleadings" do not exist, so a motion for judgment on the pleadings is not appropriate. *Cf. id.* at 211 n.10 (compiling case law demonstrating that judgment on the pleadings is proper after the defendant has answered).

Rule 12(c) incorporates this principle by permitting motions for judgment on the pleadings only after the pleadings have "closed": "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). So here we must determine whether the pleadings were closed at the time that Wells Fargo sought judgment on the pleadings.

Rule 7(a), in turn, governs pleadings and sets forth a limited list of permissible pleadings: "Only these pleadings are allowed: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to an answer." Fed. R. Civ. P. 7(a). The rule's express provision for an answer to a counterclaim anticipates that the pleadings do not "close" until an answer has been filed by the counter-defendant (unless the court orders a reply to the answer). *See Flora v. Home Fed. Sav. & Loan Ass'n*, 685 F.2d 209, 211 n.4 (7th Cir. 1982) ("Fed. R. Civ. P. 7(a) prescribes when the pleadings are closed. In a case such as this when, in addition to an answer, a counterclaim is pleaded, the pleadings are closed when the plaintiff serves his reply.") (citing 2A Moore's Federal Practice ¶ 12.15 (2d ed. 1982)); *see also Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005) ("[T]he pleadings are closed [under Rule 7(a)] for the purposes of Rule 12(c) once a complaint and answer have been filed, assuming . . . that no counterclaim or cross-claim is made.") (citing Fed. R. Civ. P. 12(c); 5C Wright & Miller, § 1367; *Flora*, 685 F.2d at 211 n.4)); 5 Wright & Miller, § 1184 at 24 n.1 (compiling case law that supports this proposition); *see* 5A Wright & Miller, § 1189 at 41; 5C Wright & Miller, § 1367 at 213.

The rationale underlying Rule 12(c) further supports this notion: that competing pleadings pertinent to the counterclaim be available for the court to consider on a motion for judgment on the pleadings. *See Sovereign Bank v. Sturgis*, 863 F. Supp. 2d 75, 80 (D. Mass. 2012) ("In the instant case, counterclaims have been filed but [the plaintiff-counter-defendant] has not yet responded to them, so the pleadings are not yet closed."). Indeed, the name of Rule 12(c), which incorporates the plural of "pleading"—"Motion for Judgment on the **Pleadings**," Fed. R. Civ. P. 12(c) (emphasis added)—along with the use of the plural "pleadings" as opposed to the singular "pleading" throughout the rule, supports the idea that judgment on the pleadings is inappropriate when only a single pleading related to a claim (whether alleged in a complaint or counterclaim) has been filed.

In short, Rule 55(a) authorizing default judgments dovetails with Rule 12(c) allowing for judgments on the pleadings. When a defendant fails to answer, Rule 12(c) precludes a judgment on the pleadings because the pleadings have not yet closed, and competing pleadings do not exist. But the plaintiff is not left to twist in the wind; rather, Rule 55(a) mandates the entry of default so that "the adversary process [will not be] halted because of an essentially unresponsive party." *H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) (per curiam). Rule 55(a)—and not Rule 12(c)—protects the diligent

15

party. *Id.* at 692; *see* 5C Wright & Miller, § 1367 at 214 ("Since the plaintiff cannot move under Rule 12(c) until [the pleadings close], the proper course for the plaintiff in a case in which the defendant fails to answer is to move for a default judgment under Rule 55 rather than seek a judgment on the pleadings.").

Here, under the plain language of Rule 55(a), had Wells Fargo sought a clerk's default as it should have since Perez had not filed an answer to the counterclaim, the district-court clerk would have been required to enter default against Perez because (1) Wells Fargo's motion sought a judgment for affirmative relief; (2) Perez failed to plead or otherwise defend against Wells Fargo's counterclaim; and (3) that failure was shown by Wells Fargo's motion. Wells Fargo's decision not to seek the entry of a clerk's default did not somehow alter the fact that Perez was nonetheless in default on the counterclaim. "[A] defendant who fails to answer within the time specified by the rules is in default even if that fact is not officially noted." 10A Wright & Miller, § 2692 at 85. So "a motion for relief under Rule 55(c) [setting aside a default] is appropriate . . . even [when] there has not been a formal entry of default . . . ." *Id.*

And relief under Rule 55(c)'s "good cause" standard[7] is precisely what Perez sought in this case, even though no default had formally been entered. The

---

[7] Rule 55(c) provides that a court "may set aside an entry of default for good cause . . . ." Fed. R. Civ. P. 55(c).  We have previously noted that "'[g]ood cause' is a mutable standard, varying from situation to situation." *Compania Interamericana Export-Import, S.A. v. Compania*

district court, however, declined to apply Rule 55(c) and instead applied Rule

6(b)(1)(B)'s "excusable neglect standard"[8] because Wells Fargo had not "requested

entry of default (or . . . an entry of default judgment)."    But Wells Fargo's

characterization of its motion as a motion for judgment on the pleadings did not

somehow change the nature of the relief that Wells Fargo actually sought—

effectively, a default judgment.  A motion for entry of default judgment is a motion

for entry of default judgment, regardless of what it is called.  So Perez was entitled

to have her motion to file an out-of-time answer to the counterclaim considered

under the "good cause" standard applicable to setting aside a default rather than

under the "more rigorous," "excusable neglect" standard.  *See E.E.O.C. v. Mike*

---

*Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996) (citation omitted).  While the standard must be construed to have substance, we have nonetheless described it as a "liberal one."  *Id.* (citation omitted).  As we have explained, "'good cause' is not susceptible to a precise formula . . . ."  *Id.*  Rather, we evaluate various factors that may be applicable in a given case. *See id.*  For example, courts generally consider whether the default was culpable or willful, whether setting it aside would prejudice the non-moving party, and whether the defaulting party may have a meritorious defense.  *Id.*  Depending on the circumstances, courts have also considered factors such as "whether the public interest was implicated, whether there was significant financial loss to the defaulting party, and whether the defaulting party acted promptly to correct the default."  *Id.* (citation omitted).  On the other hand, where a party demonstrates an intentional or willful disregard of the judicial proceedings, good cause to set aside the default does not exist.  *Id.* at 951-52.

[8] Rule 6(b)(1)(B) applies generally, when a more precise rule does not govern the situation.  *See* Fed. R. Civ. P. 6(b)(1)(B) ("**Extending Time.  (1) *In General.*** When an act may or must be done within a specified time, the court may, for good cause, extend the time: . . . (B) on motion made after the time has expired if the party failed to act because of excusable neglect.") (bold and italics in original, underline added).  Rule 55(c), however, which speaks directly to the particular issue of setting aside defaults, applies instead of Rule 6(b)(1)(B) where a party seeks to set aside a default.

17

*Smith Pontiac GMC, Inc.*, 896 F.2d 524, 528 (11th Cir. 1990) (noting that the "excusable neglect" standard is "more rigorous" than the "good cause" standard).

Applying Rule 55(c)'s "good cause" standard to Perez's motion, as opposed to Rule 6(b)(1)(B)'s more exacting "excusable neglect" standard, also squares with our decision in *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333 (11th Cir. 2005), where we held that a failure to answer a counterclaim should not, by itself, "justify the draconian remedy of dismissal with prejudice." *Id.* at 1339. Although *Betty K* involved the district court's *sua sponte* dismissal of the counter-plaintiff's complaint under Rule 41, the rationale grounding the analysis in *Betty K* applies here with equal force.

In *Betty K*, this Court analyzed the effect of a counter-defendant's failure to answer a counterclaim.[9] We reasoned that the failure to respond to a counterclaim did not warrant a dismissal with prejudice where the counter-defendant's failure to answer was not "willful or contumacious." *See id*. at 1339. We also opined that dismissal with prejudice is "plainly improper unless and until the district court finds a clear record of delay or willful conduct and that lesser sanctions are inadequate to correct such conduct." *Id.* Finally, we took account of the fact that

---

[9] The counter-defendant maintained that it served the counter-plaintiff's counsel with its answer by hand. *Id.* at 1336. The counter-plaintiff's counsel denied this contention. *Id.* Nevertheless, it was undisputed that the counter-defendant did not file its answer to the counterclaim with the clerk of court. *Id.* In its analysis, this Court proceeded under the assumption that the counter-defendant had "wholly failed" to respond to the counterclaim, just as Perez wholly failed to answer Wells Fargo's counterclaim here. *See id.* at 1339.

18

the record did not suggest that the counter-defendant, "rather than its attorney, was in any way responsible for [the] failure to answer the counterclaim." *Id.* at 1340. We concluded this section of our analysis by noting that "failure to file a pleading is generally corrected by an order to compel filing." *Id.* (quoting 4B Wright & Miller, § 1152) (internal quotation marks omitted).

Here, Perez's conduct did not appear to be "willful or contumacious." Soon after learning of her failure to file an answer to Wells Fargo's counterclaim, she filed her motion to file an out-of-time answer. Additionally, the record lacks evidence suggesting a pattern of delay or willful conduct by Perez. Despite her failure to answer, Perez had been actively litigating her case. She and Wells Fargo submitted their joint discovery report shortly before Wells Fargo filed its motion, and Perez had already propounded written discovery. Finally, as in *Betty K*, the record suggests that Perez's attorney, and not Perez herself, was responsible for the failure to answer the counterclaim.

We do not suggest that we excuse Perez's failure to file an answer to the counterclaim. Attorneys who practice in federal court are responsible for knowing the rules governing the practice. But a party's claims should not be subjected to default under a standard higher than that applicable to default. And we have long expressed our "strong policy of determining cases on their merits" when

reasonably possible.  *Fla. Physician's Ins. Co., Inc. v. Ehlers*, 8 F.3d 780, 783 (11th Cir. 1993) (per curiam).

In sum, then, Perez defaulted on Wells Fargo's counterclaim when she failed to file a timely answer.  So her request for leave to file an out-of-time answer to Wells Fargo's counterclaim should have been analyzed as a motion to set aside an entry of default under the more forgiving Rule 55(c) standard as opposed to the more exacting Rule 6(b)(1)(B) standard.  And, because Perez's failure to respond to Wells Fargo's counterclaim meant that the pleadings had not yet closed,[10] the district court's evaluation of Wells Fargo's motion for judgment on the pleadings was premature.  For these reasons, we reverse the district court's order granting Wells Fargo's motion for judgment on the pleadings and remand so that the court can consider Perez's motion under Rule 55(c).

---

[10] Nor were the pleadings closed with respect to Perez's complaint, since Wells Fargo had filed a counterclaim and Perez had not filed an answer to the counterclaim.  Because the counterclaim related to the same subject matter as Perez's complaint, and a ruling on the complaint would necessarily create law of the case for purposes of the issues raised in the counterclaim, it would make little sense to decide the claims at issue in the complaint without simultaneously considering the claims at issue in the counterclaim.  Apparently, for this reason, where a counterclaim is filed, the pleadings are not closed until a response to the counterclaim is filed.  5C Wright & Miller, § 1367 ("Rule 7(a) [] provides that the pleadings are closed upon the filing of a complaint and an answer . . . , *unless* a counterclaim . . . is interposed, in which event the filing of a reply to a counterclaim . . . normally will mark the close of the pleadings.") (emphasis added).  Since the pleadings as they related to Perez's complaint were not closed, the motion for judgment on the pleadings was premature under Rule 12(c).  Fed. R. Civ. P. 12(c) ("*After the pleadings are closed* . . . a party may move for judgment on the pleadings.") (emphasis added); *cf. Doe*, 419 F.3d at 1061 (holding that the plaintiff's motion for judgment on the pleadings was premature and should have been denied because it was filed before the defendant filed an answer).

20

**2.**

Even if Wells Fargo's motion could have been properly considered as a motion for judgment on the pleadings, it should have been denied. Although a defaulted defendant is deemed to have admitted the movant's well-pleaded allegations of fact, she is not charged with having admitted "facts that are not well-pleaded or . . . conclusions of law." *Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (citations omitted) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

Here, Wells Fargo alleged that it was "authorized by the applicable [Business Account Agreement] governing [Perez's] relationship with Wells Fargo" to close Perez's accounts and freeze Perez's funds. But under Georgia law, which governs the contract at issue here, "[t]he construction of a contract is a question of law for the court." O.C.G.A. § 13-2-1. So whether Wells Fargo's actions were authorized by the contract was a legal assertion couched as a factual allegation, and it should not have been deemed admitted.[11] This is particularly true here because Wells Fargo's counterclaim did not quote any part of the contract and instead

---

[11] We recognize that, as Wells Fargo pointed out in its appellate brief, Perez did not raise this issue for the first time until the case was on appeal. Normally, we would not entertain an entirely new argument raised for the first time on appeal. Here, however, we are remanding this case for further proceedings in the district court solely because the "good cause" standard must be applied to determining Perez's motion to file an out-of-time answer. So it appears that the issue of whether Wells Fargo's characterization of the Business Account Agreement can be accepted as a "fact" not in dispute may well arise again. In the interests of judicial economy, therefore, we address the issue of whether such an allegation may be accepted as a "fact."

merely characterized the Business Account Agreement. But, because the construction of a contract is a question of law for the court, the contents of the 65-page Agreement itself must be evaluated in determining whether Wells Fargo was entitled to judgment as a matter of law on its motion for judgment on the pleadings.[12]

## B.  Perez's Motion to Amend her Complaint

We review *de novo* an order denying a plaintiff leave to amend because of futility. *Hollywood Mobile Estates Ltd. v. Seminole Tribe of Fla.*, 641 F.3d 1259, 1264 (11th Cir. 2011).

Under Rule 15(a)(2), courts should freely give leave to amend the pleadings "when justice so requires." A court may consider several factors when deciding whether to grant a motion to amend, including "undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously

---

[12] Wells Fargo filed the Business Account Agreement in support of its motion for judgment on the pleadings. The district court was under the impression that it could not consider the Business Account Agreement in ruling on the motion for judgment on the pleadings since the Agreement was not attached to the pleadings. But, on a motion for judgment on the pleadings, documents that are not a part of the pleadings may be considered, as long as they are central to the claim at issue and their authenticity is undisputed. *See Horsley v. Feldt*, 304 F.3d 1125, 1134–35 (11th Cir. 2002) (applying the doctrine that allows documents outside the pleadings to be considered on a motion to dismiss under Rule 12(b)(6) only when the documents are central to the claim and undisputed to the motion-for-judgment-on-the-pleadings context under Rule 10(c)); *cf. Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (affirming the district court's reliance on a contract that was not attached to the parties' complaint but was submitted by the defendants along with their motion to dismiss under Rule 12(b)(6), because the contract was central to the plaintiffs' complaint, and its authenticity was not in dispute). Here, both requirements were satisfied because the Business Account Agreement, which the counterclaim referenced, was central to Wells Fargo's counterclaim, and the parties did not dispute its authenticity.

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1241 (11th Cir. 2009) (alteration in original) (quoting *Forman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)).

The district court expressly concluded that Perez had not filed her motion to amend "in bad faith or with dilatory motive," that Wells Fargo would not be unduly prejudiced by allowing the amendment, and that the case "[did] not involve any repeated failures to cure deficiencies or undue delay" in seeking to amend the complaint. Instead, the district court denied Perez's motion to amend because it concluded that amendment would be futile. In particular, the district court reasoned that, against the deemed-admitted counterclaim allegation that the Business Account Agreement authorized Wells Fargo to close Perez's accounts and freeze her funds, Perez could not conceivably prevail on any claims that Wells Fargo's actions were wrongful.

As we have previously explained, though, deeming admitted Wells Fargo's counterclaim allegation that purported to characterize the legal contents of the Business Account Agreement without quoting it was error because, among other reasons, the allegation constituted a legal conclusion. And under Georgia law, "[t]he construction of a contract is a question of law for the court." O.C.G.A. § 13-

23

2-1. For this reason, the district court was required to review the actual contract at issue in evaluating whether amendment of the complaint would necessarily be futile.

While we recognize that we can affirm the district court's ruling on any basis in the record, a review of the contract at issue does not allow us to affirm the denial of the motion to amend on futility grounds. We express no opinion on the strength or lack thereof of Perez's claims but merely note that we cannot say after review of the Business Account Agreement that any amendment of her complaint would necessarily be futile.[13] We therefore reverse the district court's order

---

[13] For example, we note that in its motion for judgment on the pleadings, Wells Fargo quoted a portion of the Business Account Agreement. While we do not suggest that Wells Fargo did anything improper, it could appear from the excerpt that all of the quoted material is part and parcel of a single section of the Agreement and that that section authorizes an award of attorney's fees and costs for, among other things, expenses associated with the freezing of a depositor's accounts "when the Bank suspects that irregular, unauthorized, or unlawful activities may be occurring in connection with [the depositor's account] . . . ." In fact, however, a review of the actual Agreement reveals that the part of the Agreement authorizing this particular type of freezing of accounts arguably does not contain a provision permitting the award of attorney's fees and costs. Instead, the fee-and-cost provision appears in what is arguably another section of the Agreement, which states that fees and costs may be imposed if the bank freezes accounts because "there is a dispute over matters such as . . . the authority to withdraw funds from [the] account." Wells Fargo alleged that it froze Perez's accounts because "numerous United States Treasury checks for tax refunds were deposited into the accounts, reflecting unauthorized MSB activity." This averment arguably may not allege the existence of a "dispute" since other allegations in the counterclaim demonstrate that the IRS had not made a claim (and did not for another six weeks) to the funds in Perez's accounts at the time that Wells Fargo closed and froze the accounts, and the counterclaim does not allege that a "dispute" between Perez and anyone else existed at the time that Wells Fargo closed and froze Perez's accounts. Nor, arguably, does it allege that Perez was improperly "withdraw[ing] funds" from the accounts. Instead, the challenged activity may arguably fall under the provision authorizing Wells Fargo to freeze accounts when it suspects that unlawful activities may be occurring in connection with them. That provision, however, does not provide for an award of attorney's fees and costs. We do not opine on the strength of such a construction but identify it solely to illustrate the point that it is at

24

denying the motion to amend and remand for further proceedings consistent with this opinion.

*C.  Attorney's Fees*

We review "an award of attorney's fees for abuse of discretion; nevertheless, that standard of review still allows us to closely scrutinize questions of law decided by the district court in reaching a fee award."  *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1304 (11th Cir. 2001) (citation omitted).  Because we have reversed the order granting judgment on the pleadings for Wells Fargo, on which the award of attorney's fees was based, we remand the attorney's fees issue to the district court for further proceedings consistent with this opinion.

## III.

This Circuit expresses a "strong preference that cases be heard on the merits," *Wahl v. McIver*, 773 F.2d 1169, 1174 (11th Cir. 1985) (per curiam), and "strive[s] to afford a litigant his or her day in court, if possible." *Betty K.*, 432 F.3d at 1339.  Because Wells Fargo filed what was in nature a motion for default judgment, the court was obligated to apply the standard for setting aside a default in determining whether Perez should have been permitted to file an out-of-time answer.  To allow the district court to conduct the analysis for setting aside a

least arguable that the Business Account Agreement may not have authorized the charging of attorney's fees and costs to Perez under the circumstances, so we cannot say that the Agreement necessarily authorized Wells Fargo's actions and that any attempt to amend the complaint would necessarily be futile.

25

default, we reverse the district court's order denying Perez's motion to file an out-of-time answer with instructions for the district court to reconsider the motion, applying Rule 55(c)'s "good cause" standard.  We also reverse the district court's order granting judgment on the pleadings to Wells Fargo and awarding it costs and attorney's fees, as well the district court's order denying Perez's motion to file an amended complaint.  We remand the case for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**