[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13679

Non-Argument Calendar

_____

CLEVELAND D. DUNN,

Plaintiff-Appellant,

*versus*

COMMISSIONER, GEORGIA DEPARTMENT OF
CORRECTIONS,
ASSISTANT COMMISSIONER INMATE HEALTH,
GDC DIRECTOR HEALTH SERVICES,
GDC STATEWIDE MEDICAL DIRECTOR AND UTILIZATION
MANAGMENT MEDICAL DIRECTOR,
GDC DENTAL DIRECTOR, et al.,

Defendants-Appellees,

TAMIKA HROBOWSKI-HOUSTON, et al.,

Defendants.

————————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 1:19-cv-00093-WLS-TQL

————————————

Before ROSENBAUM, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

Cleveland Dunn appeals the district court's grant of the defendants' motion for judgment on the pleadings in this 42 U.S.C. § 1983 civil-rights action for deliberate indifference to Dunn's serious medical needs.  After careful review, and for the reasons described below, we vacate and remand for further proceedings.

**I.**

We present the facts alleged in the operative amended complaint, accepting them as true and construing them in Dunn's favor for purposes of this appeal.[1]

---

[1] *See Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014) ("In determining whether a party is entitled to judgment on the pleadings, we accept as

Dunn suffered multiple facial fractures and other injuries during a violent attack by his cellmate at Calhoun State Prison in September 2011. Following the attack, Calhoun's medical director, Dr. Dwayne Ayers, referred Dunn to doctors at Georgia Correctional Healthcare ("Healthcare"), a partnership between the Georgia Department of Corrections ("GDC") and Augusta University to provide medical care to inmates.

In October 2011, a Healthcare doctor ordered facial reconstruction surgery, which GDC's medical director, Dr. Sharon Lewis, approved soon after. Then, in November 2011, GCHC's dental director, Dr. Mark Stevens, examined Dunn, and he ordered oral surgery to repair fractures in Dunn's jaw.

Although the surgeries were ordered and approved, nothing was scheduled. When Dunn submitted grievances about the lack of treatment, prison officials confirmed that the surgeries had been ordered but stated he needed to keep waiting. As he waited, he continued to experience extreme pain and migraines from the untreated fractures in his face and jaw.

Then, during a 2013 visit with Dr. Stevens, Dunn learned that his injuries had healed improperly and that he would need expensive braces along with surgery. Dunn requested that the oral surgery be performed, but Dr. Stevens claimed he had not yet received an order for surgery, contradicting what Dunn's medical file

true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party.").

stated at the time.  Dr. Stevens also indicated that Healthcare was unlikely to approve the procedure due to its expense.

In December 2013, Dunn filed a lawsuit against various prison medical and administrative officials raising claims based in part on the failure to adequately treat his injuries from the September 2011 attack.  The district court dismissed Dunn's claims against some, but not all, defendants, and then, in September 2016, granted summary judgment to the remaining defendants on Dunn's deliberate-indifference claims.

Meanwhile, Dunn saw Dr. Stevens sometime after the lawsuit was filed, hoping to be provided with the ordered oral surgery. But during the visit, Dr. Stevens abruptly changed his diagnosis, suggesting that Dunn's ailments were due to arthritis and not untreated facial fractures, and no longer required surgery.  Dunn requested that another doctor perform his oral surgery.  In April 2017, a physician at Calhoun inquired about the surgeries referenced in Dunn's medical chart, and later noted in Dunn's file, but did not tell Dunn, that they had been canceled "due to congenital."

In September 2017, Dunn, who remained in serious pain, approached Tiffany Whatley, the medical-services administrator at Calhoun, seeking an update about his surgeries.  Whatley informed him that, according to the internal GDC system, his surgeries had been canceled and that he could receive confirmation by submitting a sick call form, which Dunn did.

Upon learning of the cancellation, Dunn submitted grievances and requests to see physicians and to have the surgeries

rescheduled. Dunn saw Dr. Ayers, the medical director at Calhoun, who expressed surprise that the surgeries had not been completed, and confusion that the medical system indicated that the surgeries were performed. Dr. Ayers indicated that he would clarify the situation with Dr. Lewis. Dr. Ayers later told Dunn that a mistake had been made and his surgeries should have been performed much earlier.

Eventually, in October 2018, Dr. Lewis granted Dunn's appeal of the denial of a grievance related to the surgeries and upheld his request for facial reconstruction and oral surgeries. Dunn saw a doctor in January 2019 who confirmed the continuing need for surgery and the damage resulting from the extensive delay. The surgeries were not completed until mid-2020, after the filing of this lawsuit.

Dunn alleged that, due to the extensive delay, he "suffered more than eight years of serious pain and trauma from untreated injuries, including fractures to the face and resulting ailments, excruciatingly painful jaw misalignments and fractures, constant migraines, the disfigurement of his face, and serious emotional and psychological distress resulting from his painful predicament." And the delays resulted in "additional serious side effects, including improperly healed or degraded bones that required additional surgery and the insertion of . . . plates and joints, permanent damage to his jaws and face, and the permanent diminished use of his mouth, which he can no longer open completely."

## II.

Dunn brought this lawsuit *pro se* in June 2019.  After a magistrate judge repeatedly denied Dunn's requests for appointed counsel, Dunn eventually secured the assistance of an attorney, who filed the operative amended complaint in July 2021.

The amended complaint alleged a single count under 42 U.S.C. § 1983 of deliberate indifference to Dunn's serious medical needs in violation of the Eighth and Fourteenth Amendments. Dunn claimed that various prison doctors and officials exhibited deliberate indifference to his serious medical needs in multiple ways, including the following: (a) canceling surgeries with no legitimate justification; (b) refusing to perform the surgeries after they had been approved; (c) recklessly deeming the surgeries as completed or unnecessary; (d) refusing to correct the error once Dunn pointed it out and forcing Dunn to pursue the matter through the administrative process; (e) denying his justified grievance; (f) forcing him to wait more than a year for the surgeries after his grievance appeal was upheld; (g) failing to establish policies and procedures to ensure that medical treatments are not canceled or delayed without justification; and (h) entering into contracts that incentivized cost-cutting measures.

The defendants answered the complaint and then filed a joint motion for judgment on the pleadings.  They argued that dismissal was warranted because the amended complaint (1) was untimely, (2) was barred by *res judicata*, and (3) failed to state a plausible claim under Federal Rule of Civil Procedure 12(b)(6) that

would defeat qualified immunity.  In the defendants' view, Dunn's claims were untimely because the "alleged need for surgery, which is the crux of the case," was apparent shortly after the attack in 2011, and no actionable conduct by the defendants occurred within the statute of limitations.  The defendants also maintained that claim preclusion applied because "[t]he operative facts and the medical deliberate indifference claims in this case were the subject of prior litigation in another jurisdiction, which has been fully and finally litigated."  In July 2022, Dunn, who had discharged his attorney by that time, filed a *pro se* response.

A magistrate judge issued a report and recommendation ("R&R") recommending that the district court grant the defendants' motion for judgment on the pleadings.  First, the magistrate judge concluded that the statute of limitations barred Dunn's claims.  In the magistrate judge's view, Dunn was "aware of the facts which would support a cause of action" no later than 2013, when he filed the prior lawsuit raising similar claims.  While the magistrate judge acknowledged that Dunn's allegations included events in 2017 and 2018, he reasoned that these later events did not present a different factual predicate and so did not restart the limitations period, citing *Brown v. Georgia Board of Pardons & Paroles*, 335 F.3d 1259 (11th Cir. 2003).  The magistrate judge concluded that the "continuing violation" doctrine did not apply to delay accrual of the cause of action.

Second, the magistrate judge reasoned that Dunn's current action was barred by *res judicata*.  In relevant part, the magistrate

judge found that the current case and the prior case were "based upon the same factual predicate, which [was] the injuries sustained as a result of an attack by another inmate on September 9, 2011." The magistrate judge also found that the defendants in this case were all named in or functionally identical to the defendants in the prior case.

Concluding that Dunn's claims were barred by the statute of limitations or by *res judicata*, the magistrate judge did not consider the defendants' arguments for dismissal on the merits. The R&R ended with a notice that any objections must be filed within fourteen days of being served with a copy of the ruling, or Dunn would waive the right to challenge the magistrate judge's findings and conclusions except for plain error.

On August 16, 2022, Dunn signed and submitted to the district-court clerk a packet of materials, including a motion for an independent medical examination, a brief in support of that motion, a declaration in opposition to the defendants' motion for judgment on the pleadings, and a cover letter. The cover letter said that Dunn had received the magistrate judge's R&R on August 8, but that he lacked proper law-library access to respond and was resubmitting the declaration instead. He did not file separate objections.

The district court agreed with and adopted the magistrate judge's findings and conclusions. So it granted the defendants' motion for judgment on the pleadings. Dunn timely appealed. This

Court granted leave to appeal *in forma pauperis*, finding that the appeal was not frivolous, and appointed counsel.[2]

### III.

We ordinarily review *de novo* an order granting a motion for judgment on the pleadings, accepting the facts in the complaint as true and viewing them in the light most favorable to the plaintiff. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Id.* (quotation marks omitted). "If a comparison of the averments in the competing pleadings reveals a material dispute of fact, judgment on the pleadings must be denied." *Id.*

But when a party fails to object to a magistrate judge's finding or recommendation, despite notice of the time in which to file objections and the consequences of failing to object, he generally "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1. Even so, we retain the ability to review "for plain error if necessary in the interests of justice." *Id.*

"Plain error review is an extremely stringent form of review. Only in rare cases will a trial court be reversed for plain error." *Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1329 (11th Cir. 1999).

---

[2] We express our appreciation to appointed counsel in this case, Howard W. Anderson III, of Truluck Thomason, LLC, for his able and vigorous representation of Dunn on appeal.

"For there to be plain error, there must (1) be error, (2) that is plain, (3) that affects the substantial rights of the party, and (4) that seriously affects the fairness, integrity, or public reputation of a judicial proceeding." *Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1179 (11th Cir. 2002).

We review for plain error because Dunn did not timely object to the magistrate judge's R&R. Dunn contends that district court overlooked a declaration that should have been construed as objections to the R&R. But that declaration was in response to the motion for judgment on the pleadings, and it was drafted before the magistrate judge's ruling. It also did not contain any discernible response to the timeliness and *res judicata* issues on which the magistrate judge ruled. So we cannot liberally construe the declaration as meaningful objections to the R&R, and the court did not abuse its discretion by failing to consider it.

Still, we agree with Dunn that plain-error relief is warranted in this case. The two justifications offered by the R&R and the district court—timeliness and *res judicata*—are clearly inadequate to justify dismissal of Dunn's entire action.

First, timeliness. Whether Dunn's § 1983 claims are timely depends on when they accrued. "[T]he accrual date of a § 1983 cause of action is a question of federal law," *Wallace v. Kato*, 549 U.S. 384, 388 (2007), which depends on "the specific constitutional right alleged to have been infringed," *McDonough v. Smith*, 588 U.S. 109, 115 (2019) (quotation marks omitted).

In this circuit, "the allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided." *Lavellee v. Listi*, 611 F.2d 1129, 1132 (5th Cir. 1980).[3] When the alleged violation involves continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the unlawful conduct ceases. *Donaldson v. O'Connor*, 493 F.2d 507, 529 (5th Cir.1974) (holding that a § 1983 action brought by a former mental patient for continuous civil confinement without psychiatric treatment did not accrue until the patient was released), *vacated on other grounds by, O'Connor v. Donaldson*, 422 U.S. 563 (1975). "The critical distinction in continuing violation analysis . . . is whether the plaintiff complains of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of a violation into the present, which does." *Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) (cleaned up).

Every circuit to consider the issue has similarly recognized that deliberate-indifference claims may involve a continuing violation that extends the limitations period. *See DePaola v. Clarke*, 884 F.3d 481, 487 (4th Cir. 2018) ("[A] prisoner may state a deliberate indifference claim for a continuing violation when prison officials have refused to provide medical attention for an ongoing serious condition."); *Shomo v. City of New York*, 579 F.3d 176, 182 (2d Cir.

---

[3] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

2009) ("[T]he continuing violation doctrine can apply when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs."); *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) ("[E]very day that they prolonged his agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew.").

Here, the district court plainly erred in finding that Dunn's cause of action accrued when the injury occurred in 2011 or when he filed a lawsuit in December 2013.  Dunn's current deliberate-indifference claim does not allege just the "present consequence of a one time violation, which does not extend the limitations period." *Lovett*, 335 F.3d at 1183; *cf. Brown*, 335 F.3d at 1261 (no continuing violation where a prisoner challenged the application of a prior-enacted policy to his parole proceedings).

Instead, Dunn alleges an ongoing failure to provide needed and requested medical care for more than eight years after GDC/Healthcare doctors ordered facial reconstruction and oral surgeries, causing unnecessary pain and suffering each and every day until his surgeries took place in mid-2020.  On these allegations, the cause of action "d[id] not accrue until the date medical attention [was] provided," *Lavellee*, 611 F.2d at 1132, when the "unlawful conduct cease[d]," *Donaldson*, 493 F.2d at 529.  Because Dunn alleged claims based on a continuing violation that did not accrue until 2020, after this action was filed, the district court erred in

dismissing the entire action as barred by the statute of limitations.[4] *See* O.C.G.A. § 9-3-33.

Next, *res judicata*. Under *res judicata*, or claim preclusion, "a final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001). The party invoking *res judicata* bears the burden of proving four elements: (1) there is a final judgment on the merits; (2) the decision was rendered by a court of competent jurisdiction; (3) both cases involve the same parties or their privies; and (4) both cases involve the same causes of action. *Id.*; *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999). "If even one of these elements is missing, res judicata is inapplicable." *In re Piper Aircraft Corp.*, 244 F.3d at 1296.

Here, *res judicata* does not bar this entire action because Dunn's amended complaint raised claims that were not actually asserted, and could not have been brought, in the prior case. Under our precedent, "the res judicata preclusion of claims that 'could have been brought' in earlier litigation" does not include "claims which arise after the original pleading is filed in the earlier litigation." *Manning v. Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992). In other words, "[s]ubsequent conduct, even if it is of the same nature

---

[4] Plus, Dunn's allegations of deliberate indifference included conduct within two years of the filing of this lawsuit, including the denial of his justified grievance and forcing him to wait more than a year for the surgeries after his appeal of the denial of his grievance was upheld.

as the conduct complained of in a prior lawsuit, may give rise to an entirely separate cause of action." *Kilgoar v. Colbert County Board of Education*, 578 F.2d 1033, 1035 (5th Cir. 1978). So a "plaintiffs' present action, to the extent it is based on conduct subsequent to the second suit, is not barred by the prior litigation." *Id.*

While Dunn's current case and the prior case share some factual overlap, relating to the failure to treat his injuries at Calhoun from 2011 through 2013, the current complaint also covers the failure to provide needed and requested medical attention and treatment from 2013 through 2020, which was not at issue in the prior proceeding. So at most, *res judicata* bars claims based on only that conduct that preceded the filing of the prior lawsuit in December 2013. Claims of deliberate indifference based on conduct after the filing of the operative pleading in the prior case are not barred. *Manning*, 953 F.2d at 1360; *Kilgoar*, 57 8 F.2d at 1035.

In sum, we conclude that the district court plainly erred in dismissing Dunn's amended complaint as barred by the statute of limitations and *res judicata*. The errors also affected Dunn's substantial rights and the fairness of the judicial proceedings, as they resulted in the improper dismissal of his case and prevented him from seeking redress for the alleged lack of medical attention and treatment. *See Brough*, 297 F.3d at 1179. We therefore exercise our discretion to correct the error, notwithstanding Dunn's failure to object to the magistrate judge's R&R. *See* 11th Cir. R. 3-1.

We decline to consider the defendants' arguments that Dunn failed to state a plausible claim to relief. The district court

did not address that matter below, so we leave it for the court to consider in the first instance on remand.  *See Danley v. Allen*, 480 F.3d 1090, 1092 (11th Cir. 2007) (explaining that it is "the responsibility of the district court in the first instance" to evaluate the sufficiency of a complaint's allegations and render a reasoned decision).

## IV.

As a final issue, Dunn challenges the district court's failure to appoint counsel.  But he does not appeal the orders below denying his various motions for appointment of counsel, which the magistrate judge entered.  Instead, Dunn argues that the court erred in failing to consider appointing counsel *sua sponte* after promising to do so, presumably once Dunn's attorney withdrew from the case.

We review the district court's failure to take action *sua sponte* for plain error, at most.  *See, e.g., United States v. Curtin*, 78 F.4th 1299, 1309 (11th Cir. 2023) (reviewing for plain error a court's failure to recuse *sua sponte*); *United States v. Smith*, 700 F.2d 627, 633 (11th Cir. 1983) (reviewing for plain error a district court's failure to issue a curative instruction *sua sponte*).

Here, Dunn cannot establish plain error in the district court's failure to appoint counsel *sua sponte*.  "The district court has broad discretion in making this decision, and should appoint counsel only in exceptional circumstances." *Bass v. Perrin*, 170 F.3d 1312, 1320 (11th Cir. 1999).  That broad discretion hardly reflects "a hard-and-fast rule of the sort that might satisfy the plain-error standard." *United States v. Curtin*, 78 F.4th 1299, 1310 (11th Cir. 2023).  Nor has

Dunn established an effect on his substantial rights, given our decision vacating the grant of the defendants' motion for judgment on the pleadings. Nevertheless and without expressing an opinion on the merit of it, we direct the district court to reconsider on remand Dunn's request for appointment of counsel.

## V.

In sum, we vacate the district court's grant of judgment on the pleadings to the defendants, and we remand for further proceedings consistent with this opinion.

**VACATED AND REMANDED.**