[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-15958

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 18, 2009
THOMAS K. KAHN
CLERK

D.C. Docket Nos. 08-21730-CV-ASG, 07-01532 BKC-LM

IN RE:       GISELA EGIDI,

                                        Debtor.

--------------------------------------------------------------------------------------------

BANK OF AMERICA, N.A.,

                                        Plaintiff-Appellant,

versus

BARRY E. MUKAMAI,
Trustee,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 18, 2009)

Before MARCUS and PRYOR, Circuit Judges, and SCHLESINGER,* District
Judge.

_____

    * Honorable Harvey E. Schlesinger, United States District Judge for the Middle District
of Florida, sitting by designation.

SCHLESINGER, District Judge:

This matter arises from an appeal of the District Court's Final Judgment affirming the Judgment of the United States Bankruptcy Court for the Southern District of Florida. This appeal presents the question of whether the payment of a credit card debt using balance transfers and credit card advances, drawn on other credit cards, constitutes property of a debtor so that the transfers are avoidable preferences under the Bankruptcy Code.

I.

Around August of 2006, Gisela Egidi decided to consolidate her debt into one credit card. Using cash advances made on a line of credit from a credit card account and a type of cash advance on a credit card through a convenience check[1] from Capital One, Egidi made the following payments to MBNA: a) August 8, 2006 - $4,000.00; b) August 10, 2006 - $10,065.00; and c) August 12, 2006 - $2,000.00.[2] Egidi subsequently filed bankruptcy on October 28, 2006.

The permanent Chapter 7 Trustee, Barry Mukamal, brought suit against

---

[1] Although not clear in the record, this Court understands a convenience check to be a unique type of check issued by a credit card company to its cardholders that allows the cardholder to write a check against a line of credit to be charged against that credit card.

[2] The record is unclear whether the three transfers came from the same credit card or from more than one credit card; however, whether it singular or plural has no bearing on the ultimate outcome of the case.

Bank of America ("BOA"), as the successor to MBNA,[3] to recover the $16,065.00, alleging that the payments were avoidable as transfers under 11 U.S.C. § 547(b). BOA admitted the total of $16,065.00 was paid to Egidi's MBNA account by payments made on August 8, 10, and 12, 2006, but MBNA, now BOA, did not know the source of the payments and believed they may have been bank-to-bank transfers.

The Trustee moved for summary judgment arguing that MBNA, now BOA, received a preferential transfer. The Bankruptcy Court held that the transfers were preferences that could be avoided by the trustee and granted summary judgment in favor of the trustee. The Bankruptcy Court entered judgment against BOA in the total amount of the transfers, $16,065.00. BOA appealed to the District Court, which affirmed the Bankruptcy Court's decision in September 2009. BOA now appeals to this Court challenging the legal conclusions of the Bankruptcy Court that were affirmed by the District Court.

## II.

"In the [B]ankruptcy context, this [C]ourt sits as a 'second court of review' and thus 'examines independently the factual and legal determinations of the [B]ankruptcy [C]ourt and employs the same standards of review as the [D]istrict

---

[3] This Court will in places refer to the successor BOA rather than MBNA.

3

[C]ourt.'" Finova Capital Corp. v. Larson Pharmacy, Inc. (In re Optical Tech., Inc.), 425 F.3d 1294, 1299-1300 (11th Cir. 2005)(quoting Barrett Dodge Chrysler Plymouth, Inc. v. Cranshaw (In re Issac Leaseco, Inc.), 389 F.3d 1205, 1209 (11th Cir. 2004)). This Court "review[s] de novo a grant of summary judgment." Dzikowski v. Northern Trust Bank of Fla., N.A. (In re Prudential of Fla. Leasing, Inc.), 478 F.3d 1291, 1296 (11th Cir. 2007). This Court also "reviews de novo the question of law whether a debtor's interest is property of the bankruptcy estate." Witko v. Menotte (In re Witko), 374 F.3d 1040, 1042 (11th Cir. 2004).

### III.

"A preference is 'a transfer that enables a creditor to receive payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in the distribution of the assets of the bankruptcy estate.'" In re Issac Leaseco, Inc., 389 F.3d 1205, 1209 (11th Cir. 2004)(quoting Union Bank v. Wolas, 502 U.S. 151, 160-61, 112 S. Ct. 527, 533 (1991)). The trustee of the bankruptcy estate is authorized to recover certain transfers made within 90 days of the petition date if the trustee can demonstrate the transfer is an avoidable preference pursuant to the provisions of 11 U.S.C. § 547(b). 11 U.S.C. § 547(b) of the Bankruptcy Code provides,

> Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property--
> (1) to or for the benefit of a creditor;

4

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made--

    (A) on or within 90 days before the date of the filing of the petition; or

    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if--

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

"Equality of distribution among creditors is a central policy of the Bankruptcy Code. According to that policy, creditors of equal priority should receive pro rata shares of the debtor's property." Begier v. IRS, 496 U.S. 53, 58, 110 S. Ct. 2258, 2262-63 (1990). This policy is furthered by § 547(b), which permits "a trustee in bankruptcy to avoid certain preferential payments made before the debtor files for bankruptcy. This mechanism prevents the debtor from favoring one creditor over others by transferring property shortly before filing for bankruptcy." Id. at 58, 110 S. Ct. at 2263.

To avoid a preferential transfer, the trustee bears the burden of proving all five elements listed in § 547(b). Warsco v. Preferred Technical Group, 258 F.3d 557, 564 (7th Cir. 2001). The parties do not dispute that the trustee has met his burden and proved the five elements listed. The sole issue contested by the parties

is the "threshold requirement" in the statute: whether the payments made to Egidi's MBNA credit card account from her other credit card accounts constitute "transfer[s] of an interest of the debtor in property." 11 U.S.C. § 547(b); Parks v. FIA Card Services, N.A. (In re Marshall), 550 F.3d 1251, 1254 (10th Cir. 2008).

Section 547(b)'s avoidance power is limited to transfers of "property of the debtor," which the Supreme Court has defined as "that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." Begier, 496 U.S. at 58, 110 S. Ct. at 2263. "[P]roperty that would not have been available for distribution to his creditors in a bankruptcy proceeding" is not "property of the debtor" under § 547(b). Id. The 1984 amendments to the Bankruptcy Code changed the term "property of the debtor" to "an interest of the debtor in property," but the Supreme Court stated that, because this alteration was a "clarifying change," the older language and the newer language are "coextensive." Id. at 59 n.3, 110 S. Ct. at 2263 n.3.

In Nordberg v. Sanchez (In re Chase & Sanborn Corp.), 813 F.2d 1177, 1181 (11th Cir. 1987), which involved fraudulent transfers, we discussed "[t]he rules established in the avoidable preference cases" and explained that "any funds under the control of the debtor, regardless of the source, are properly deemed to be the debtor's property, and any transfers that diminish that property are subject to avoidance." See Andreini & Co. v. Pony Express Delivery Services, Inc. (In re

6

Pony Express Delivery Servs., Inc.), 440 F.3d 1296, 1300 (11th Cir. 2006) (holding that a transferee is an "initial transferee" under the Bankruptcy Code "if they exercise legal control over the assets received"); Walker v. Wilkinson, 296 F. 850, 852 (5th Cir. 1924) (under the previous bankruptcy statute, "[t]he transfer or payment must be one that diminishes the fund to which creditors of the same class can legally resort for the payment of their debts, and to an extent that makes it impossible for such other creditors to obtain as great a percentage as the favored one, in order that the transaction constitute a preference.").

The Bankruptcy Court concluded that Egidi had sufficient control over the funds provided by the credit card companies, that the funds constituted "property of the debtor," and that the transfer of those funds to MBNA within the 90-day window before the bankruptcy petition was filed resulted in an avoidable preference. The District Court reached the same conclusion and affirmed "the Bankruptcy Court's determination that the transferred funds were property of the debtor" because Egidi "was in full control of the disposition of the funds."

On appeal, BOA argues that the Bankruptcy Court erred because the transfer was a bank to bank transfer that was a mere substitution of creditors and was not an avoidable preference. BOA asserts that the funds from the other credit card companies were not controlled by Egidi and were not the property of Egidi, the debtor. This argument fails.

7

The evidence established that Egidi directed other credit card companies to pay MBNA and had control of the lines of credit from other credit card companies. There is no evidence that any credit card company decided to direct the funds to MBNA on its own accord or specifically instructed Egidi to pay MBNA with the funds. "The payments were a debtor's discretionary use of borrowed funds to pay another debt. Such transactions are generally considered preferential transfers." In re Marshall, 550 F.3d at 1257.

BOA argues that the funds were not in the control of the debtor because they were never in Egidi's bank account. This argument must also fail. The inquiry is whether Egidi controlled the disposition of the funds, not whether she mechanically made the payment to MBNA. That the "possession [by Egidi] took place electronically rather than mechanically (through deposit slips and checks) is of no moment." Id. The other credit card companies "extension of credit to [Egidi] that permitted her to pay [MBNA] was a mere loan, no different than if [the other credit card companies] had given [her] the money and she had physically presented the money to [MBNA] in payment." Yoppolo v. MBNA American Bank, N.A. (In re Dilworth), No. 07-8020, 2008 WL 649064, at *5 (B.A.P. 6th Cir. Mar. 12, 2008), aff'd, 560 F.3d 562 (6th Cir. 2009). Egidi had control of the funds when she directed the other credit card companies to pay MBNA.

BOA also argues that the transfer was not an avoidable preference because it

did not diminish the funds available to the other creditors. According to BOA, the funds belonged to the other credit card companies and had the funds not been transferred, they would have remained the property of the other credit card companies. Therefore, the funds would not have been available to Egidi's other creditors. This argument must also fail.

Egidi's transfer of funds to MBNA, instead of other creditors, deprived her creditors of "an equal distribution of the . . . assets" and constituted a voidable preference. Once the credit card companies extended the lines of credit to Egidi, she could have paid other creditors or purchased other assets that would have become part of the estate and been available to other creditors. Because Egidi chose to pay MBNA from the lines of credit, the other creditors were denied payment or an opportunity for payment. "Because the debtor 'could have purchased a yacht or acquired some other assets instead of paying [her] debt,' the assets in the estate at the time of bankruptcy were less than they could have been" and the transfer, which diminished the estate, was an avoidable preference. McLemore v. Third Nat'l Bank in Nashville (In re Montgomery), 983 F.2d 1389, 1395 (6th Cir. 1993); Yoppolo v. Greenwood Trust Co., (In re Spitler), 213 B.R. 995, 998 (Bankr. N.D. Ohio 1997). "The purpose of the law of preferences is to secure an equal distribution of the bankrupt's assets among his creditors of like class." Deel Rent-A-Car, Inc. v. Levine, 721 F.2d 750, 756 (11th Cir. 1983)

9

(quoting Walker, 296 F. at 852).

Our sister circuits that have considered this issue have reached the same conclusion that we reach today. In a decision with virtually identical facts, the Tenth Circuit concluded that the transfer of funds from one credit card company to MBNA to pay a credit card debt, at the direction of the debtor, constituted a preference that could be avoided by the trustee because the debtor had control of the funds, directed their distribution, and the transfer diminished the estate by depriving "the bankruptcy estate of resources which would otherwise have been used to satisfy the claims of creditors." In re Marshall, 550 F.3d at 1256. The Sixth Circuit reached an identical conclusion in a decision where a trustee sought to avoid a balance transfer from one credit card company to another as preferential under § 547 of the Bankruptcy Code. In re Dilworth, 560 F.3d 562 (6th Cir. 2009). "Because the funds transferred by Citi to MBNA at Dilworth's direction were not earmarked funds and because their transfer diminished the bankruptcy estate, those funds were property in which Dilworth had an interest. The [B]ankruptcy [C]ourt [in Dilworth] did not err in holding that the transfer was preferential and therefore [a]voidable by the Trustee." Id. at 565; see also In re Wells, 382 B.R. 355 (B.A.P. 6th Cir. 2008) (holding that the use of convenience checks drawn on a credit card account to pay a debt owed on another credit card was a preferential transfer, subject to avoidance, because the new lender "did not direct or require the loaned

funds to be paid to MBNA" and the debtor "could have used [the borrowed funds] to purchase assets instead of paying the MBNA debt").

BOA has failed to direct this Court to one decision of another circuit that supports its assertion that the use of funds drawn on one credit card to pay the debt owed on another credit card is not a preference under the Bankruptcy Code that is subject to avoidance. The decisions it cites for support, Loveridge v. The Ark of Little Cottonwood, Inc. (In re Perry), 343 B.R. 685, 688 (Bankr. D. Utah 2005), and Chase Manhattan Mortgage Corp. v. Shapiro (In re Lee), 339 B.R. 165, 171 (Bankr. E.D. Mich. 2006), have both been abrogated, see In re Marshall, 550 F.3d 1251; In re Lee, 530 F.3d 458 (6th Cir. 2008). Because the transfer was within the control of Egidi, the debtor, and the transfer diminished the assets in the estate available to other creditors, the transfer was a preference, which could be avoided by the trustee.

IV.

BOA attempts to seek refuge in the earmarking exception, but that doctrine provides no shelter. Other courts have recognized an exception to section 547(b) when the property is "earmarked." 5 Collier on Bankruptcy ¶ 547.03[2]. Under the earmarking doctrine, which is a court fashioned doctrine, a third party makes a loan to a debtor so that the debtor is able to satisfy the claim of a designated creditor. Coral Petroleum, Inc. v. Banque Paribas-London, 797 F.2d 1351, 1356

(5th Cir. 1986). In that case, the proceeds do not become part of the debtor's assets, and no preference is created. Id. This exception exists "primarily because the assets from the third party were never in the control of the debtor and therefore payment of these assets to a creditor in no way diminishes the debtor's estate." Id.

This Court has not expressly applied the earmarking doctrine in the past, and we decline to do so today. See American Bank of Martin County v. Leasing Service Corp. (In re Air Conditioning, Inc. of Stuart), 845 F.2d 293, 297 (11th Cir. 1988). Because Egidi, not the lender, designated the recipient of the transferred funds, the earmarking doctrine is inapplicable and additional discussion is not warranted. See In re Marshall, 550 F.3d at 1257 (The credit card company "placed no conditions on Debtors' use of the funds, it only honored their instructions. The earmarking doctrine is inapplicable.").

## V.

BOA also attempts to cloud the issue by calling the transfer a "bank to bank transfer" and argues that the transfers were mere "substit[utions of] one creditor for another" which did not diminish the estate. This argument is only applicable when the new lender directs the payments and "[t]he money was never available to satisfy the claims of general creditors." Genova v. Rivera Funeral Home (In re Castillo), 39 B.R. 45, 47 (Bankr. D. Colo. 1984). Because Egidi directed the payment and the money could have been used to satisfy other creditors, Growe v.

12

AT&T Universal Card Services (In re Adams), 240 B.R. 807, 812 (Bankr. D. Me. 1999), the transfers were not bank to bank transfers that amounted to a mere substitutions of creditors outside the control of the debtor. "We must ask whether the loan proceeds 'would have been part of the estate had [they] not been transferred before the commencement of bankruptcy proceedings.' The . . . loan proceeds were an asset of the estate for at least an instant before they were preferentially transferred to [MBNA.]" In re Marshall, 550 F.3d at 1258. Egidi's estate was diminished by the transfer.

VI.

BOA lastly argues that the transfers were really a "debt swap," which cannot be avoided by the Trustee, pursuant to 11 U.S.C. § 546(g). This argument was not raised before the Bankruptcy Court and was mentioned in a single sentence in the conclusion section of BOA's brief to the District Court. This Court will not consider this issue because it is not the type of issue that merits deviation from the general requirement that in order to be resolved at the appellate level an issue must first be raised in the Bankruptcy Court. See In re Air Conditioning, Inc. of Stuart, 845 F.2d at 298.

Moreover, this assertion was not fully and fairly raised in BOA's initial brief. Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived. See United States v. Fiallo-

13

Jacome, 874 F.2d 1479, 1482 (11th Cir. 1989); Farrow v. West, 320 F.3d 1235, 1242 n.10 (11th Cir. 2003). BOA must not be allowed to embellish an argument in a reply brief when it failed to fully raise and address the issue in its initial brief. Such a practice unfairly impedes the Trustee's response. This Court concludes that BOA waived this issue by not presenting it fully in its initial brief.

## VII.

The decisions of the Bankruptcy Court and District Court are affirmed. The transfer of credit card funds to pay Egidi's debt owed to MBNA now BOA, which occurred within 90 days of the bankruptcy petition, was a preference subject to avoidance by the trustee under 11 U.S.C. § 547(b) and were not subject to earmarking. The trustee was entitled to judgment in his favor in the amount of the transfer, $16,065.00.

**AFFIRMED.**