[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10748

Non-Argument Calendar

_____

ACHERON PORTFOLIO TRUST,

AVERNUS PORTFOLIO TRUST,

LORENZO TONTI 2006 TRUST,

STYX PORTFOLIO TRUST,

ACHERON CAPITAL, LTD.,

Plaintiffs-Appellants,

*versus*

BARRY MUKAMAL,

as Trustee of the Mutual Benefits Keep Policy Trust,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:18-cv-25099-FAM

_____

Before NEWSOM, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Plaintiffs, the Acheron Trusts and Acheron Capital (collectively, "Acheron"), appeal the district court's summary judgment in favor of defendant Barry Mukamal, as Trustee of the Mutual Benefits Keep Policy Trust.  After careful review, we affirm.

## I.

In 2004, the Securities and Exchange Commission brought an enforcement action against Mutual Benefits Corporation for fraudulently selling fractional investment interests in viaticated life insurance policies—policies that Mutual Benefits purchased from terminally ill patients for a percentage of their face value. *See SEC v. Mutual Benefits Corp.*, 408 F.3d 737, 738–40 (11th Cir. 2005).  As a result, the viaticated life insurance policies were placed into a receivership, and investors were given the option of retaining or selling their interests in the policies.  The retained policies ("Keep Policies") were ultimately transferred into the Mutual Benefits Keep Policy Trust (created by the "Trust Agreement") for which

Mukamal (the "Trustee") acts as trustee. Acheron owns fractional interests in these policies.

When the trust was formed, the Trustee entered into an agreement with third party Litai Assets LLC to service the policies. When that agreement expired, the Trustee entered into a Renewal and Extension of Servicing Agreement with Litai (the "Renewal Agreement"). The Renewal Agreement provided Administrative Fee Credits—discounts on service fees—to Keep Policy holders whose interests were obtained during the receivership rather than from subsequent purchasers ("Keep Policy Investors"). *See* Renewal Agreement § 2.3. Because Acheron purchased its viatical interests secondarily, it was excluded from receiving Administrative Fee Credits under the Renewal Agreement.

Partly in response to this exclusion, Acheron Capital entered into an agreement with the Trustee in 2015 (the "2015 Agreement"), four months after the Renewal Agreement was signed, that required the Trustee to provide the same rights, benefits, and credits to Acheron that it did to all Keep Policy Investors. Because investors must make ongoing premium payments on the viaticated policies, the Trustee felt that Acheron's ongoing cash investments "provide[d] value to the trust."

Because both agreements pertained to a court-appointed receivership, they required court approval. The Trustee and Acheron jointly filed a motion for approval, which outlined the

changes included in the Renewal Agreement and the 2015 Agreement.

After the Renewal Agreement took effect, the Trustee stopped Administrative Fee Credit payments to Acheron. Acheron claims that this breached the 2015 Agreement because the Administrative Fee Credits were paid to other Keep Policy Investors. Further, Acheron claims that the Trustee breached his fiduciary duty to Acheron—which claims that it is a Keep Policy Investor. The Trustee moved for—and the district court granted—summary judgment on both claims.[1] Acheron appeals.

## II.

We review a district court's rulings on cross motions for summary judgment de novo, viewing the facts "in the light most favorable to the non-moving party on each motion." *Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012) (citation omitted). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and

---

[1] The district court concluded that the Acheron Trusts lacked standing because only Acheron Capital was a party to the 2015 Agreement containing the arbitration clause. Because Acheron Capital has standing to enforce the agreement, we need not and do not decide whether the Acheron Trusts have standing. *See Greater Birmingham Ministries v. Secretary of State for Ala.*, 992 F.3d 1299, 1317 (11th Cir. 2021).

The Trustee also sought—and the district court granted—summary judgment on another breach-of-contract claim. Acheron does not challenge the judgment on this Count 4 on appeal.

the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

We review a district court's factual findings for clear error and its legal conclusions de novo. *See AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1363 (11th Cir. 2021). We also review de novo questions of contract interpretation. *See Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1237 (11th Cir. 2019).

## III.

First, Acheron argues that the district court was incorrect in granting summary judgment to the Trustee on the breach-of-contract claim because the 2015 Agreement requires the Trustee to pay the same Administrative Fee Credit to Acheron as he pays to Keep Policy Investors. The district court granted summary judgment on this issue for three separate reasons. Acheron responds to two of these three reasons in its opening brief, but it fails to address the third, relevant here.

The district court held that *res judicata* bars Acheron's claim for breach of the 2015 Agreement. The argument goes something like this: Because the motion for approval covered both the Renewal Agreement and the 2015 Agreement, Acheron—by signing the motion—stipulated that the two agreements were consistent. Because the Renewal Agreement excludes Acheron from receiving

Administrative Fee Credits, Acheron "cannot now under principles of *res judicata* argue the agreements are inconsistent" by asserting that the 2015 Agreement requires Administrative Fee Credit payments.

Acheron did not address the court's *res judicata* holding in its opening brief on appeal; it first responded to the district court's ruling in its reply brief. "Arguments not properly presented in a party's initial brief or raised for the first time in the reply brief are deemed waived." *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009). Accordingly, whatever the merits or demerits of the district court's *res judicata* analysis, we do not consider Acheron's argument further, and the district court's breach-of-contract ruling is affirmed.

## IV.

Acheron separately argues that the Trustee breached his fiduciary duty to Acheron as a Keep Policy Investor. Acheron incorrectly reads the Trust Agreement: Acheron is not a Keep Policy Investor, so the Trustee owed it no fiduciary duty.

The Trust Agreement defines Keep Policy Investors as "persons who have invested in an entire interest or a fractional interest in a Keep Policy *owned of record* by the Receivership Entities, and whose interest in such Keep Policy has not been forfeited as of the Closing Date."[2] Trust Agreement § 1.1 (emphasis added).

---

[2] Keep Policies are "those policies which were designated to be retained by investors pursuant to the procedures set forth in the *Order on Disposition of Policies and Proceeds* entered September 14, 2005 and *Order Clarifying*

Receivership Entities are defined as Mutual Benefits Corp., Viatical Services, Inc., and Viatical Benefactors, LLC. *Id.*

Acheron's argument that it is a Keep Policy Investor according to the plain language of the definition in the Trust Agreement fails. It is undisputed that Acheron did not acquire its interests from a Receivership Entity. In other words, Acheron did not invest in a policy "owned of record" by a Receivership Entity. Acheron's interpretation would require that the definition of Keep Policy Investor include *all* holders of fractional interests in Keep Policies, rendering the "owned of record" language superfluous. We decline to read the language of the Trust Agreement in that way. *See Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non–Marine Ass'n*, 117 F.3d 1328, 1338 (11th Cir. 1997) ("[A]n interpretation which gives a reasonable meaning to all provisions of a contract is preferred to one which leaves a part useless or inexplicable.") (alteration in original). We also need not consider course-of-dealing evidence to discern the proper interpretation, as Acheron proposes, because the terms of the Trust Agreement are unambiguous.

Acheron alternatively argues that the Trustee had an implied fiduciary duty to Acheron because he holds complete control

---

*Disposition order and Approving Form of Notice* entered by the Court on November 22, 2005 and which, as of the Closing Date, have not been sold or lapsed." Trust Agreement § 1.1. The "Closing Date" is the date of the sale of the servicing assets under the servicing agreement with Litai in 2009, which was part of the court-approved transaction by which the Trust was created. *Id.*

over the insurance policies in which Acheron holds an interest. Again, we disagree.  Acheron's relationship with the Trustee was an arms-length contractual relationship—it purchased interests in the Keep Policies with knowledge that they were under a receivership formed to protect the interests of victim investors and not third-party purchasers of defaulting interests such as Acheron.  We reject Acheron's efforts to elevate its contractual relationship with the Trustee to that of a fiduciary relationship.

## V.

For the foregoing reasons, we affirm the district court's order.

**AFFIRMED**.