[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-11005

Non-Argument Calendar

_____

DERRICK CHRISTOPHER RHODES, II,

                                        Plaintiff,

DERRICK CHRISTOPHER RHODES,

                                        Plaintiff-Appellant,

*versus*

FIRST ADVANTAGE BACKGROUND SERVICES CORP.,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:22-cv-02399-RBD-RMN

_____

Before WILSON, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Appellant Derrick Rhodes tried to rent a home within a homeowners' association that required a background check, to be performed by the appellee, First Advantage Background Services Corp. First Advantage generated the report but, according to Rhodes, the report contained inaccurate information about his criminal history—leading the homeowners' association to deny Rhodes's application. Rhodes sued First Advantage, alleging violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. 1681 *et seq*. After answering the complaint, First Advantage moved for judgment on the pleadings, which the district court granted. Rhodes now appeals that order. After careful review, we affirm in part and reverse in part.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

A.      **The Allegations in the Complaint**

In November 2022, Rhodes was looking for a home to rent for himself, his wife, and their four children.[1] He expressed interest in a home in Orlando managed by Invitation Homes. He already lived in a property managed by Invitation, and Invitation had previously procured two tenant screening report for Rhodes. Those reports, curated by Transunion in January 2020 and October 2022, were both free from any negative or derogatory findings. After Rhodes took a virtual tour of the home he liked in Orlando, he filled out a rental application, paid a $100 application fee, and paid a separate $500 fee for Invitation to remove the active rental listing from the internet. Invitation approved his rental application later the same day. Rhodes learned that the Orlando home was within the bounds of a homeowners' association, Stoneybrook Master Association of Orlando, Inc. Notwithstanding the Transunion report that Invitation pulled for Rhodes the month prior, Stoneybrook required a new report compiled by First Advantage. Rhodes consented to Stoneybrook obtaining that report from First Advantage.

First Advantage is a consumer reporting agency that compiles and maintains records relating to consumers. From these records, First Advantage generates tenant screening reports and

---

[1] When reviewing a district court's order entering judgment on the pleadings, "we accept the facts in the complaint as true and we view them in the light most favorable to the nonmoving party." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998). Our factual recitation, therefore, is drawn from Rhodes's Second Amended Complaint. We accept these facts for the present purpose, though they may or may not actually be true as alleged. *See Thompson v. Regions Sec. Servs., Inc.*, 67 F.4th 1301, 1304 n.1 (11th Cir. 2023).

provides those reports to property management companies, landlords, and brokers, who use the reports to help make decisions regarding prospective tenants and borrowers. First Advantage generated a report regarding Rhodes's credit history, criminal history, and civil records history, at Stoneybrook's request. It stated, in duplicate, that Rhodes had been convicted of a felony charge (or two) of possession of controlled substance.[2] In a section of the report titled "Criminal Report Summary," First Advantage included two entries: the first, labeled "Record 1," bears case number 07CR2184801; and the second, labeled "Record 2," bears case number 07CR21848. Record 1 states "Disposition: Conviction," and Record 2 states "Disposition: Guilty."

In fact, Rhodes had *once* been charged with, and pled guilty to, possession of a controlled substance. Under Illinois law, however, the disposition of this charge was to be revised to "dismissed" in 2009, upon his successful completion of a probationary term. Moreover, because the criminal case was dismissed in 2009, it was too old to be reported on a 2022 consumer report under the FCRA, which requires that any adverse information other than a conviction must be removed from a consumer report after a period of seven years. And, First Advantage listed the same criminal case twice with slightly different case numbers—once correctly, and

---

[2] Rhodes did not attach the report to his complaint, but First Advantage attached it to the answer. Under the incorporation-by-reference doctrine, we may properly consider exhibits filed with an answer when adjudicating a motion for judgment on the pleadings. *See Horsley v. Feldt*, 304 F.3d 1125, 1134–35 (11th Cir. 2002).

once with the last two digits omitted—effectively reporting that Rhodes had two previous convictions instead of one.

After receiving the inaccurate report from First Advantage, Rhodes's prospective homeowners' associate denied Rhodes's rental application. Rhodes was specifically told that Stoneybrook rejected his application because of the felony conviction listed on the First Advantage report. Rhodes was confused by this information, because this "conviction" did not appear on the Transunion reports that Invitation had reviewed, nor was Rhodes aware of this record ever appearing as a "conviction" on any background check performed by other consumer report agencies. Rhodes contacted Invitation and explained that First Advantage's report was inaccurate and that the charge against him had been dismissed. He also provided the court records and a letter from a criminal defense attorney confirming the dismissal. Invitation, however, told Rhodes that the issue was between him and Stoneybrook, who had the final say over rentals within the homeowners' association community. Stoneybrook, in turn, told Rhodes that he had to dispute the report with First Advantage. So, Rhodes reached out to First Advantage and provided the letter from his lawyer and the certified court records reflecting the dismissal. A few weeks later, in early December 2022, Stoneybrook contacted Rhodes and told him that First Advantage completed its reinvestigation and that Stoneybrook would not be renting Rhodes the property. Of this, Rhodes could only conclude that First Advantage failed to correct the report.

All of this, Rhodes alleged, occurred because First Advantage failed to maintain and follow reasonable procedures to ensure maximum possible accuracy in its reports and failed to conduct a reasonable investigation to correct the error after Rhodes disputed the original report. Had First Advantage reviewed public court records from Cook County, Illinois, it could have discovered the inaccuracy—and the fact of the dismissal—before providing the report to the homeowners' association. Or, First Advantage could have discovered the same information and rectified its error upon reinvestigation. First Advantage's inaccurate reporting cost Rhodes the opportunity to rent his intended home and causing financial harm, emotional distress, inconvenience, and anxiety.

Based on these facts, Rhodes claimed several violations of the FCRA. In Count I, Rhodes alleged that First Advantage violated 15 U.S.C. § 1681e(b), which requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Rhodes said that First Advantage had notice of its deficient procedures because it has been sued by other consumers for similar conduct, but in this case, it also had actual notice because Rhodes disputed the report. In Count II, Rhodes alleged a violation of § 1681i, which provides that when a consumer disputes "the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency . . . the agency shall, free of charge, conduct a reasonable investigation to determine whether the disputed information is inaccurate" and either correct or delete the item from the report.

Rhodes contended that First Advantage violated this provision by failing to conduct a reasonable reinvestigation after he raised his dispute and, as a result, failing to correct the inaccurate entry. And in Count III, Rhodes alleged a violation of § 1681c. This portion of the FCRA describes information that must be excluded from consumer reports. *See* § 1681c(a). Aside from bankruptcies and "records of convictions of crimes," § 1681c(a) requires exclusion of "[a]ny other adverse item of information . . . which antedates the report by more than seven years." Because Rhodes's criminal record was neither a conviction nor within seven years of the report's date, First Advantage violated this provision by its inclusion of that purported conviction. As to all three Counts, Rhodes pled that First Advantage's violations were willful, or negligent in the alternative.

### B.     The Motion for Judgment on the Pleadings

First Advantage answered and attached a handful of exhibits that Rhodes mentioned in his complaint: the original report, the letter from Rhodes's lawyer with a copy of the Illinois state court docket, First Advantage's reinvestigation record, a different copy of the Illinois court records, and the post-reinvestigation report.[3]

Towards the end of the discovery period, First Advantage moved for judgment on the pleadings. In the motion, First

---

[3] First Advantage submitted the attorney's letter and its attached copy of the docket as exhibits to the answer. These exhibits are properly before us as we adjudicate the motion for judgment on the pleadings. *See Horsley*, 304 F.3d at 1134–35.

Advantage contends that it is entitled to judgment as a matter of law because, for two reasons, Rhodes cannot show that the consumer reports were inaccurate. First, First Advantage argues that Rhodes's Illinois criminal record amounts to a "conviction" under federal law—even if it was later dismissed—and was thus properly reportable under the FCRA. Second, First Advantage says, the Cook County court in which Rhodes was charged never entered an order of dismissal or discharge, notwithstanding Rhodes's successful completion of probation. Because the court record did not reflect a dismissal, but rather a guilty plea and a successful term of probation, First Advantage's report was accurate.

Rhodes responded to the motion, parrying that First Advantage's insistence on the technical accuracy of the report was merely an attempt to avoid the FCRA's requirement of "maximum possible accuracy." First, Rhodes points out that the First Advantage report erroneously duplicated Rhodes's criminal case, making it appear as if he had two convictions in separate cases—an inaccuracy which First Advantage failed to address in its motion. Second, Rhodes turns to the misleading nature of the "conviction" entries. Rhodes refers to the transcript of the final hearing in his criminal case, at which the judge made clear that Rhodes did *not* have a "conviction" on his record. Analogizing these facts to similar debt-collection cases, Rhodes argues that the hearing transcript, at the least, creates a material factual question about the accuracy of First Advantage's reporting that must be resolved by a jury. Finally, Rhodes takes on First Advantage's position that "conviction"

must be defined by federal law and maintains that technical accuracy is insufficient to satisfy the FCRA's accuracy requirement.

The district court granted First Advantage's motion. In doing so, the district court agreed with First Advantage that "conviction," within a federal statute, is defined under federal law and that a report of a "conviction" remains accurate for FCRA purposes even if it is later modified through some form of "post-conviction rehabilitative relief." The district court similarly agreed with First Advantage that a consumer reporting agency that accurately reports a publicly available record—in this case, Rhodes's conviction, where the Illinois court never entered a dismissal order—does not violate the FCRA. Having found no inaccuracy in the report, the district court concluded it needed proceed no further into the reasonableness of First Advantage's investigation and reinvestigation procedures.

Finally, as for the erroneous duplication of the criminal record, the district court reasoned that Rhodes could not state a claim for violation of § 1681i—failing to perform a reasonable reinvestigation in response to a dispute—because Rhodes did not dispute the duplicate entry with First Advantage. As to Rhodes's claim under § 1681e(b), which requires consumer reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of the information" they report, the district court held that Rhodes could not show causation of an injury. Stoneybrook's policy is to deny applicants with a single conviction, so it would have denied Rhodes's rental application even in the absence of the erroneous

duplicate.  Thus, even if the duplication was inaccurate, the district court held, First Advantage is entitled to judgment as a matter of law.

This timely appeal followed.

## II.

When a district court grants judgment on the pleadings, our review is de novo.  *Thompson v. Regions Security Services, Inc.*, 67 F.4th 1301, 1305 (11th Cir. 2023).   Judgment on the pleadings is proper when "there are no material facts in dispute and the moving party is entitled to judgement as a matter of law." *Id.* (quoting *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014)).  When determining whether judgment on the pleadings is proper, "we accept as true all material facts alleged in the non-moving party's pleading, and we view those facts in the light most favorable to the non-moving party."  *Perez*, 774 F.3d at 1335.

## III.

One of the stated purposes of the FCRA is to ensure fair and accurate reporting about consumers.  *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1251 (11th Cir. 2020) (citing 15 U.S.C. § 1681(a)–(b)).  In service of that purpose, the FCRA requires consumer reporting agencies to "follow reasonable procedures" to ensure "maximum possible accuracy" in their consumer reports.  *Id.* (citing § 1681e(b)).  If a consumer disputes "the completeness or accuracy of any item of information" contained in the consumer's file, the agency "shall, free of charge, conduct a reasonable reinvestigation" to determine whether the disputed

information is inaccurate and either record the current status of that piece of information or delete it from the consumer's file. § 1681i(a)(1)(A). Under § 1681c, certain information must be excluded from consumer reports including, as relevant here, "adverse item[s] of information, other than records of convictions of crimes which antedate[] the report by more than seven years." When a reporting agency "willfully fails to comply" with any of these requirements, the injured consumer may recover actual damages, statutory damages, punitive damages, and reasonable costs and fees. § 1681n. And when a reporting agency "is negligent in failing to comply" with any of the FCRA's requirements, a successful plaintiff is entitled to actual damages and reasonable costs and fees. § 1681o.

To state a claim for a violation of § 1681e(b), the plaintiff must show "that the agency's report contained factually inaccurate information, that the procedures it took in preparing and distributing the report weren't 'reasonable,' and that damages followed as a result." *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 944 (11th Cir. 2021). A claim under § 1681i—which focuses on the contents of a consumer's file, rather than a report—requires a showing that the file contained factually inaccurate information, that the reporting agency's procedures were not reasonable, and that damages followed. *Id.* To show a willful violation, the plaintiff must establish that the reporting agency "'either knowingly or recklessly violated' the FCRA." *Id.* at 947 (quoting *Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1280 (11th Cir. 2017)). "'Recklessness' generally requires 'action entailing an unjustifiably high risk of harm that is either known or

so obvious that it should be known.'" *Williams v. First Advantage LNS Screening Sols. Inc.*, 947 F.3d 735, 745 (11th Cir. 2020) (quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68 (2007)). But "a violation isn't willful where a defendant 'followed an interpretation that could reasonably have found support in the courts.'" *Id*. (quoting *Safeco*, 551 U.S. at 69).

Rhodes contends the district court erred in three ways when it granted First Advantage's motion for judgment on the pleadings.

First, Rhodes says, the district court erred by failing to acknowledge that—regardless of whether the Illinois Offense amounts to a "conviction" under federal law—First Advantage's report was inaccurate because it failed to provide important context to satisfy the FCRA's requirement of "maximum possible accuracy." Absent that context, Rhodes argues, First Advantage's report was misleading.

Second, Rhodes asserts that the district court erred in its causation analysis. Here, Rhodes says the district court improperly presumed that Rhodes's housing application would have been denied based on the presence of *any* criminal record and that this presumption rested on a failure to take the facts in the light most favorable to Rhodes. What's more, Rhodes argues, the district court focused too narrowly on the specific housing application denial rather than on the broader impact of First Advantage's inaccurate reporting.

Third, Rhodes challenges the district court's determination that, because Rhodes did not specifically identify duplicative

reporting as a subject of his dispute, First Advantage was not required to reinvestigate the relevant records. This decision, Rhodes says, was based on a flawed and out-of-circuit opinion that is contrary to binding Eleventh Circuit law.

We address each issue in turn.

### A.    What is a "Conviction?"

Rhodes's claims under §§ 1681e(b) and 1681i both require inaccurate or incomplete information, included in either a consumer report or a consumer file. In this case, the alleged inaccuracy or incompleteness turns on the nature of his criminal disposition: whether it is properly characterized as a conviction or a dismissal. As for his claim under § 1681c, the nature of the disposition is again dispositive, because while convictions that predate the report by more than seven years may be included, "[a]ny other adverse item of information" older than seven years must be excluded. § 1681c(a). We begin, therefore, by determining whether Rhodes's 2008 criminal case counts as a "conviction."

First, we must understand the state-law context. The Illinois legislature has enacted a measure to provide relief to first-time drug offenders who successfully complete a term of probation. *See* 720 Ill. Comp. Stat. 570/410. This is commonly referred to as "1410 Probation," owing to the statute number under which it was originally codified. The statute provides that, after completion of the imposed term of probation, "the court shall discharge the person and dismiss the proceedings against him or her." Ill. Comp. Stat. 570/410(f). The statute also provides that "[a] disposition of

probation is considered to be a conviction for the purposes of imposing the conditions of probation and for appeal, however, discharge and dismissal under this Section is not a conviction for purposes of this Act or for purposes of disqualifications or disabilities imposed by law upon conviction of a crime." Ill. Comp. Stat. 570/410(g). In other words, by the plain text of the Illinois statute, Rhodes was "convicted" when he pled guilty and was subject to a probationary term, but discharge and dismissal would have operated to unwind that conviction.

Second, we must establish our framework for defining a conviction for FCRA purposes. The district court first determined that federal law controls and then found that Rhodes's guilty plea amounts to a conviction, notwithstanding any diversionary disposition. Rhodes, on appeal, does not contest either of those conclusions and, instead, challenges only whether First Advantage's reporting was inaccurate or incomplete, regardless of the "conviction" being technically correct. Indeed, in his opening brief, Rhodes refers to the definition of "conviction" only in passing—relegating the topic to a single footnote devoid of argument or citation to law. Nor did he dispute the technically accuracy of the "conviction" label before the district court. He has thus forfeited the opportunity to challenge the district court's conclusion that federal law applies and that his "conviction" is a "conviction." *See Sappupo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and

24-11005                 Opinion of the Court                 15

authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed waived."). We therefore proceed with the presumption that Rhodes was, in fact, convicted of his Illinois offense.[4]

### B.    The Accuracy of the Report

Armed with the conclusion that Rhodes *did* have a reportable conviction, we move to our next question: did First Advantage report that conviction with "maximum possible accuracy" as required under § 1681e(b)? Yes and no. Recall that, in the initial

---

[4] We note that, in any event, there can be no question as to the application of federal law in defining a "conviction" within the meaning of a federal statute. *See United States v. Mejias*, 47 F.3d 401, 403 (11th Cir. 1995) ("The meaning of the word 'conviction' in a federal statute is a question of federal law unless Congress provides otherwise."); see also *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) ("Under [the prior panel precedent] rule, a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*."). As for whether the Illinois criminal offense amounts to a conviction under federal law, we need not decide the issue since Rhodes has forfeited it—but such a conclusion would be consistent with our case law. *See, e.g.*, *Mejias*, 47 F.3d at 404 (*nolo contendere* plea with adjudication withheld in Florida state court is a "conviction" under federal law); *United States v. Jones*, 910 F.2d 760, 761 (11th Cir. 1990) (same); *see also Aldaco v. RentGrow, Inc.*, 921 F.3d 685, 688–89 (7th Cir. 2019) (guilty plea followed by probation and dismissal under Illinois law is a "conviction" under federal law and reportable under the FCRA).

report, First Advantage listed two criminal records: Record 1 with case number 07CR2184801 and Record 2 with case number 07CR21848.  We address each separately.

### i.    Record 1

Record 1 is an accurate recitation of Rhodes's criminal history.  As we have explained, under federal law, Rhodes was convicted of a crime and that conviction is properly reported in Record 1.  Rhodes contends that his conviction was "automatically" dismissed upon successful completion of probation, but that simply is not what the Illinois statute says.  The statute, recall, provides that, after completion of the imposed term of probation, "the court shall discharge the person and dismiss the proceedings against him or her."  Ill. Comp. Stat. 570/410(f).  We think it axiomatic to say that, if the court is required to enter an order dismissing the charges, the dismissal is not automatic.[5]  That order was not entered; the disposition on the docket was not amended; and First Advantage accurately reported that which the public record revealed.  The FCRA imposes no obligation for consumer reporting agencies to "resolve legal disputes about the validity of the underlying [adverse information] they report."  *Losch*, 995 F.3d at 946 (quoting *Wright v. Experian Info. Sols. Inc.*, 805 F.3d 1232, 1242 (10th Cir. 2015)).  On the contrary, "in determining whether a claimed inaccuracy is

---

[5] Rhodes's lawyer, in his letter to First Advantage disputing the report, concedes as much—he describes the lack of dismissal order as "a common Cook County error."  Separately, Rhodes describes the situation as "a mistake made by the court clerk."

potentially actionable," we must determine "whether the information in dispute is 'objectively and readily verifiable.'" *Holden v. Holiday Inn Club Vacations, Inc.*, 98 F.4th 1359, 1369 (11th Cir. 2024). Here, the objective and readily verifiable public record—the Cook County docket—reported a conviction. First Advantage, in turn, accurately reported that conviction to its customer.

Our analysis of all three Counts, as they relate to Record 1, can end here. The report was not inaccurate, as required to state a claim under §§ 1681e(b) and 1681i. And Record 1 is a "conviction" that is not excluded under § 1681c.

### ii.    *Record 2*

Record 2, however, is a different story. As an initial matter, there seems to be no dispute that Cook County Case No. 07CR21848 does not exist. While First Advantage resisted this concession in its answer before the district court, it did concede that Rhodes "was convicted of *one* felony in Cook County Case No. 07CR2184801." (Emphasis added). We think a reasonable jury could find that it is factually inaccurate under § 1681e(b) to report a criminal conviction that does not exist. We turn, then, to the remaining elements of a § 1681e(b) claim.

### C.    Causation

A plaintiff seeking relief under § 1681e(b) must show, in addition to factual inaccuracy, "that the procedures [the agency] took in preparing and distributing the report weren't 'reasonable,' and that damages followed as a result." *Losch*, 995 F.3d at 944. Setting aside the reasonableness of First Advantage's procedures, we next

consider causation and damages.  The district court determined that Rhodes "cannot show that the double entry on the Report causes his damages since Stoneybrook denied his application because its policy . . . was to deny applicants with a single felony conviction 'in the last 100 years.'"  And that is how the relevant "property qualifying criteri[on]" is spelled out on the report: "applicant has no criminal records matched in the last 100 years."

Two problems with this: first, while the court may properly consider exhibits attached to the answer when they are "central to the plaintiff's claim" and "undisputed," *Horsley*, 304 F.3d at 1134, this does not obviate the court's obligation to "accept as true all material facts alleged in the non-moving party's pleading, and . . . view those facts in the light most favorable to the non-moving party," *Perez*, 774 F.3d at 1335.  Here, Rhodes alleged that he "was told directly that Stoneybrook was refusing to allow [him] to live in the home due to the felony conviction reported by First Advantage" and that "[b]ecasue First Advantage failed to issue a corrected tenant screening report, Stoneybrook did not reconsider its decision to deny [Rhodes's] housing application."  In crediting the inference that Stoneybrook would have denied Rhodes's application even if it revealed one criminal record, rather than two, the district court subverted the standard and took the facts in the light more favorable to First Advantage.  Taking the allegations as true and drawing all inferences in Rhodes's favor, we cannot conclude that the erroneous listing of Record 2 was immaterial.

Second, Rhodes alleges a *willful* violation of § 1681e(b)—and a willful violation exposes the reporting agency to liability not just for actual damages, but also statutory and punitive damages. § 1681n. In other words, an inability to show actual damages (assuming that is the case) would not be fatal to Rhodes's claims relating to Record 2. *See Santos v. Healthcare Revenue Recovery Grp., LLC.*, 90 F.4th 1144, 1154 (11th Cir. 2024) ("[T]he Act allows for statutory damages without proof of actual damages where the consumer reporting agency commits more serious willful violations."); *Losch* 995 F.3d at 943 ("Losch needn't show that the false reporting caused his credit score to plummet; the false reporting itself was the injury."). Our next question, then, is to determine whether Rhodes has pled willfulness—and, as we now explain, that analysis overlaps with our third element of a § 1681e(b) claim, the reasonableness of the agency's procedures.

## D.    Reasonable Procedures

A violation is willful when the reporting agency "'either knowingly or recklessly violate[s]' the FCRA." *Losch*, 995 F.3d at 947 (quoting *Pedro*, 868 F.3d at 1280). "Recklessness," in turn "generally requires 'action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Williams*, 947 F.3d at 745 (quoting *Safeco*, 551 U.S. at 68). A violation will not be deemed reckless "unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69. That is, "Congress made consumer

reporting agencies liable for statutory damages, but only when the agencies *willfully* fail to 'follow reasonable procedures to assure [the] maximum possible accuracy' of their reports." *Santos*, 90 F.4th at 1157 (quoting §§ 1681e(b), 1681n).

To that end, Rhodes specifically alleged that First Advantage (1) failed to establish or follow reasonable procedures; (2) has been sued in the past on allegations of unreasonable procedures in violation of the FCRA; and (3) had actual notice of its deficient procedures. And, as we have already established, Rhodes alleged that First Advantage reported a criminal conviction in a case that, by all accounts, does not exist. These allegations suffice, at this stage, to preclude judgment as a matter of law for a willful violation of the FCRA. *See Marchisio v. Carrington Mortg. Servs., LLC*, 919 F.3d 1288, 1301 (11th Cir. 2019) (finding that the plaintiff pled a willful violation where "Plaintiffs owed nothing on [a] particular loan" but "the employee incorrectly confirmed to the credit reporting agencies that Plaintiffs did have a balloon payment due in the future"); *id.* at 1302 ("We agree with the district court that, as a matter of law, Defendant's investigative efforts were not reasonable."); *Levine v. World Fin. Network Nat. Bank*, 437 F.3d 1118, 1123 (11th Cir. 2006) (holding that the plaintiff pled a willful violation where he cited § 1681n, alleged that "the distribution of [certain] information was 'a wilful [sic] violation,'" and alleged that Experian allowed a user access to his credit file for an impermissible purpose). All of this is to say, Rhodes has alleged a willful violation of the FCRA such that he is not required to show actual damages. The district court,

therefore, erred in its causation analysis because it held Rhodes to pleading actual damages.

In sum, Rhodes pled allegations from which a reasonable jury could find a willful violation of §§ 1681e(b) and 1681c for the inclusion of the fictive Record 2 in his consumer report. First Advantage is not entitled to judgment as a matter of law on this claim.

### E.    Reasonable Procedures

We turn now to Rhodes's § 1681i claim. Recall that, because Record 1 was not inaccurate, Rhodes's claims with respect to that record all fail. Record 2, however, presents a closer call. Rhodes alleges that he "communicated to First Advantage that the criminal record(s) in question were dismissed, and therefore reporting the same record(s) as convictions was patently untrue and inaccurate." He also alleges that, when his lawyer wrote a letter to First Advantage, he "conclusively established that the record had long since been dismissed" and "included copies of the certified court records which also reflected the criminal record(s) were dismissed." In the letter, Rhodes's lawyer explained that Rhodes "had four cases in Cook County but none resulted in a conviction," explained the meaning of the nolle prosequi disposition in three of those cases, and laid out the 1410 Probation dismissal scheme. Notably absent from both the complaint and the lawyer's letter are any reference to Rhodes disputing the existence of Record 2. At the hearing on the motion for judgment on the pleadings before the district court, Rhodes conceded as much. When the district court asked if it was right that Rhodes never disputed the duplicate record, Rhodes

conceded, "You are correct, Your Honor, that Mr. Rhodes did not dispute specifically the duplicative reporting." Absent notice of the dispute, First Advantage had no duty to reinvestigate the duplication of Record 2, separate from the accuracy of the "conviction" disposition. § 1681i(a)(1)(A) (imposing a duty to reinvestigate "if the completeness or accuracy of any item of information contained in a consumer's file . . . is disputed by the consumer and the consumer notifies the agency . . . of such dispute"); *see also Aldaco v. RentGrow, Inc.*, 921 F.3d 685, 690 (7th Cir. 2019) (Aldaco's "protest to Yardi contended only that the battery record wasn't hers. She did not dispute the reported length of the sentence or the omission of the charge's dismissal. After receiving the complaint, Yardi had a duty to reinvestigate only whether 'disputed information' was inaccurate. Yardi did investigate and confirm with its sources the only information that was disputed: whether the battery record pertained to Aldaco.").

We conclude, therefore, that First Advantage was entitled to judgment as a matter of law as to the § 1681i claim, to the extent it was predicated on the duplicate record.

## IV.  CONCLUSION

Where does all of this leave us? Because Rhodes failed to allege facts from which a reasonable jury could conclude that Record 1 was inaccurate, all of his claims—under §§ 1681e(b), 1681i, and 1681c—fail as a matter of law. Likewise, First Advantage is entitled to judgment as a matter of law on Rhodes's § 1681i claim as it relates to Record 2, because he never disputed the duplicate

entry so as to trigger a duty to reinvestigate. So, we affirm those portions of the district court's order. But to the extent Rhodes's §§ 1681e(b) and 1681c claims are based on Record 2, a reasonable jury could find in his favor, based on the material facts alleged. *See Perez*, 774 F.3d at 1335. We therefore reverse in part and remand for further proceedings on those counts.

**AFFIRMED in part; REVERSED and REMANDED in part.**