[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13746

Non-Argument Calendar

_____

BOBBY SHED,

                                              Plaintiff-Appellant,

*versus*

UNIVERSITY OF SOUTH FLORIDA BOARD OF TRUSTEES,
CAMILLE BLAKE,
Attorney, in her official capacity,
DEBORAH MCCARTHY,
Ms., in her official capacity,
MOEZ LIMAYEM,
Dean, in his official capacity,
JAQUELINE RECK,
Associate Dean, in her official capacity, et al.,

2                      Opinion of the Court                23-13746

Defendants-Appellees,

DWAYNE SMITH,
Provost, in his official capacity, et al.,

Defendants.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:22-cv-01327-KKM-TGW

————————————————

Before JORDAN, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Bobby Shed, proceeding *pro se*, appeals the district court's
orders (1) dismissing, in part, his *pro se* employment discrimination
and retaliation claims under the Equal Protection Clause of the
Fourteenth Amendment and Title VII of the Civil Rights Act of
1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, (2) granting judgment
on the pleadings, in part, and (3) taxing the costs of his deposition
against him. First, he argues that the district court erred in dismiss-
ing his Title VII retaliation claim in Count II. Second, he asserts
that the district court erred in dismissing his Title VII discrimina-
tion claim in Count IV. Third, he maintains that the district court

erred in granting judgment on the pleadings on his Equal Protection Clause retaliation claim in favor of Murat Munkin. Fourth, he contends that the district court abused its discretion in taxing the cost of his deposition against him.

# I

## A

Mr. Shed was admitted as a Ph.D. student to the University of South Florida ("USF") in 2017. During his Ph.D. program, Mr. Shed participated in a research fellowship program as a graduate assistant, where he was awarded more than $180,000.00 in grants, fellowships, and work contract awards from USF. Mr. Shed identifies as a Black, American, gay, male with disabilities.

Between August 10, 2018, and March 6, 2020, Mr. Shed filed three separate internal complaints with USF's Office of Diversity Inclusion and Equal Opportunity alleging racial discrimination. The first complaint was filed on August 10, 2018, and was a "formal, written, good faith complaint" about the USF Police's "racial treatment" of Mr. Shed, "which he perceived to be incommensurate with the treatment of similarly situated individuals." Mr. Shed, however, does not explain what "racial treatment" he experienced at the hands of the USF Police.[1]

---

[1] Mr. Shed argues on appeal that had his motion to amend and file excess pages been granted, he would have provided audio recordings and transcripts between him and a university official detailing how "his initial complaint was based on being stopped and harassed by USF Police based on his race" and that this complaint was "submitted after non-Black Finance Ph.D. students stated

Mr. Shed's second complaint, filed on September 1, 2019, was another "race-based complaint . . . document[ing] that USF Police issued citations to Black people" at a higher rate than their representation on campus and in the "surrounding Hillsborough County" community. Mr. Shed's last complaint, filed on March 6, 2020, was a "formal, written, good-faith Whistleblower Report and Grievance complaint" related to his allegations about Professor Munkin's behavior in class.

Mr. Shed alleged that these internal complaints were not timely reviewed and that adverse actions were taken against him in response to filing his complaints, including being denied his disability accommodations, having his funding withheld, and being dismissed from USF's academic programs.

Mr. Shed also alleged that Professor Munkin retaliated against him after he filed his complaints and the two discussed the data that formed the basis of these complaints. Mr. Shed alleged that Mr. Munkin knew of the content of these internal complaints because Mr. Shed sent Mr. Munkin the data and because Mr. Munkin commented to Mr. Shed about the race-based complaints. Mr. Shed alleged that Mr. Munkin retaliated by denying Mr. Shed previously granted accommodations, such as giving him a cumulative

---

they were never stopped when they go to their offices at night." But he only attached his Fifth Amended Complaint to his motion to amend and file excess pages and stated that supplemental exhibits would follow. Such exhibits were never filed. Mr. Shed instead now refers this Court to filings that predate his Fifth Amended Complaint to supply this information.

rather than non-cumulative final, denying Mr. Shed extended time on quizzes, and denying Mr. Shed the opportunity to reschedule quizzes.

**B**

Mr. Shed brought suit against USF, the Board of Trustees, and several members of the USF staff in their individual and official capacities, including Camille Blake, Joanne Adamchak, Deborah McCarthy, Moez Limayem, Jacquelin Reck, Jianping Qi, Ninon Sutton, Scott Besley, and Mr. Munkin (collectively the defendants). Mr. Shed later moved to amend his complaint and for leave to file additional pages. His motion included his proposed amended complaint and noted that "supplemental exhibits" would be forthcoming. The district court granted the motion and directed Mr. Shed to file the attachment as his Fifth Amended Complaint.

Mr. Shed's Fifth Amended Complaint raised claims for retaliation and discrimination pursuant to various state and federal laws. Relevant to this appeal, Mr. Shed brought a retaliation claim pursuant to Title VII against USF (Count II), a retaliation claim pursuant to the Fourteenth Amendment and 42 U.S.C. § 1983 against Mr. Munkin (Count III), and a racial discrimination claim pursuant to Title VII against USF (Count IV).[2]

---

[2] On appeal, Mr. Shed does not address Counts I, V, VI, VII, or VIII, and therefore they are abandoned. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

The defendants moved to dismiss Mr. Shed's Fifth Amended Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  The district court granted the motion as to all claims, except for Count III against Mr. Munkin in his individual capacity.

As to Count II, the district court ruled that Mr. Shed's retaliation claim against USF failed because his complaints about how the USF Police treated private individuals were not related to an unlawful employment practice under Title VII.

As to Count III, the district court concluded that Mr. Shed lacked standing to seek injunctive relief against Mr. Munkin in his official capacity because USF was immune from suits for damages under 42 U.S.C. § 1983.  However, the district court did not dismiss Count III in its entirety because the defendants failed to challenge Mr. Shed's claims against Mr. Munkin in his individual capacity.

As to Count IV, the district court explained that Mr. Shed's racial discrimination claim against USF failed because his allegations of USF ineffectively handling his internal complaints due to his race was not an adverse employment action.

Mr. Munkin subsequently moved for judgement on the pleadings for the remaining retaliation claim against him in his individual capacity.  The district court granted the motion.  It ruled that Mr. Shed's claim failed because the Equal Protection Clause of the Fourteenth Amendment did not include a cause of action for general retaliation.  The district court further held that, even if Mr.

Shed's claim was plausible, Mr. Munkin would be entitled to qualified immunity.

After judgment was entered, the defendants submitted a proposed bill of costs totaling $2,227.34 that included the costs of fees for service of summons and subpoena, fees for printed or electronically recorded transcripts necessarily obtained for use in the case, and fees and disbursements for printing. Mr. Shed objected to the entirety of the proposed bill of costs and argued, in relevant part, that there was no evidence that the deposition included in the bill was necessary for the case, that he was never provided with the deposition transcript, and that the deposition was not used in any of the filings. The district court awarded $29.34 in costs associated with the service of the subpoena and $2,013.00 in costs associated with Mr. Shed's deposition. The district court found that the defendants' request for fees for the deposition was proper because the deposition was necessary and taken within the course of discovery. It also found that the deposition's costs were sufficiently supported by the invoice submitted as documentation of costs.

## II

We first address Mr. Shed's challenge to the district court's grant of the defendants' motion to dismiss his Fifth Amended Complaint.

## A

We review a district court's order granting a motion to dismiss for failure to state a claim *de novo*. *See EEOC v. STME, LLC*, 938 F.3d 1305, 1313 (11th Cir. 2019). *Pro se* pleadings are held to a less

stringent standard than pleadings drafted by attorneys and will be liberally construed. *See Campbell v. Air Jam. Ltd.*, 760 F.3d 1165, 1168 (11th Cir. 2014). However, a court may not "serve as *de facto* counsel for a party," or "rewrite an otherwise deficient pleading in order to sustain an action." *Id.* at 1168–69 (citation and internal quotation marks omitted).

To overcome a Rule 12(b)(6) motion to dismiss, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002). The complaint must include factual allegations sufficient "to raise a right to relief above the speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements[,]" are insufficient to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). The district court (and we) must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff[ ]." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010).

Issues not briefed on appeal are deemed abandoned, and arguments raised for the first time on appeal in a civil action are waived. *See Access Now, Inc.*, 385 F.3d at 1330–31. Additionally, an appellant generally may not raise new arguments for the first time

23-13746                Opinion of the Court                9

in a reply brief. *See Lovett v. Ray*, 327 F.3d 1181, 1183 (11th Cir. 2003) (per curiam).

**B**

Title VII makes it unlawful for an employer to discriminate against an employee because he has opposed any practice made unlawful, or because he has made a charge or participated in a related proceeding. *See* 42 U.S.C. § 2000e-3(a). "To that end, employers cannot retaliate against employees who have complained about—that is, opposed—discrimination based on [certain] . . . protected characteristics." *McCreight v. AuburnBank*, 117 F.4th 1322, 1339 (11th Cir. 2024) (citation and internal quotation marks omitted). By its own terms, and as evidenced by the intent of Congress, Title VII is limited to "protect[ing] employees from their employers' unlawful actions." *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011). *See also Perry v. Schumacher Grp. of La.*, 809 F. App'x 574, 579 (11th Cir. 2020) (per curiam) ("Only 'employees' may bring a Title VII suit."); *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1243 (11th Cir. 1998) ("We can assume that Congress . . . meant to limit the pool of potential plaintiffs under Title VII.").[3]

---

[3] Though the district court did not address whether Mr. Shed was an employee for purposes of Title VII, we assume that Mr. Shed sufficiently alleged that he was employed by USF as a research assistant. *See Twombly*, 550 U.S. at 570. *See also Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235 (11th Cir. 2004) (concluding that a graduate student who was employed as a graduate research assistant was an employee of the university under the economic realities test).

To properly allege his race-based retaliation claim, Mr. Shed must allege that "he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." *Goldmsith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008). To establish that he engaged in statutorily protected expression, Mr. Shed "must show that [he] had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311–12 (11th Cir. 2002) (citation and internal quotation marks omitted). However, Title VII does not protect against retaliation resulting from complaints about non-employment related practices. *See Logan v. City of Chicago*, 4 F.4th 529, 538–39 (7th Cir. 2021) ("Title VII is not a general bad acts statute . . . [r]ather, the conduct it prohibits is specially set forth.") (alterations in original) (citation and internal quotation marks omitted). *See also Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011).[4]

We agree with the district court that Mr. Shed failed to properly allege a claim for retaliation in violation of Title VII

---

[4] In a Title VII employment discrimination lawsuit, the complaint need not allege a prima facie case under the framework announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which is "an evidentiary standard, not a pleading requirement." *Swierkiewicz*, 534 U.S. at 510. Rather, the complaint "must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 508 (quoting Fed. R. Civ. P. 8(a)(2)). *Swierkiewicz* was cited with approval in *Twombly*, 550 U.S. at 569–70, so it is still good law in the Title VII context. And although *Swierkiewicz* involved the discrimination context, we see no reason why this principle would not apply with equal force to a retaliation claim.

against USF.  In Count II, he alleged that USF retaliated against him by decreasing his funding and removing him from his graduate program after he complained about the USF Police's alleged discrimination against Black people.  But he failed to allege "that [he] had a good faith, reasonable belief that [his] employer was engaged in unlawful employment practices," because USF Police's treatment of private individuals is not an employment practice.  *See Edwards v. Ambient Healthcare of Ga., Inc.*, 674 F. App'x 926, 930 (11th Cir. 2017) (per curiam) ("[T]he driver's alleged actions toward non-employee patients of Ambient and their caregivers (while reprehensible) is not an employment practice made unlawful by Title VII.") (citation and internal quotation marks omitted); *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 n.16 (11th Cir. 1997) (noting that employees' retaliation claim based on opposition to unlawful discrimination against motel customers "could not proceed under the familiar Title VII retaliation statute" because the plaintiffs did not allege that they were discriminated against for "opposing an unlawful employment practice.") (emphasis removed).

Though we liberally construe Mr. Shed's pleadings, we cannot "serve as *de facto* counsel for a party," or "rewrite an otherwise deficient pleading in order to sustain an action."  *Campbell*, 760 F.3d at 1168–69.  Accordingly, we affirm as to the retaliation claim.

## C

Title VII precludes employers from discriminating against an employee "because of" his race.  42 U.S.C. § 2000e-2(a).  To state a claim for race discrimination in violation of Title VII, a complaint

need only provide sufficient factual allegations to "plausibly suggest that the plaintiff suffered an adverse employment action due to intentional racial discrimination." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015). *See also McCarthy v. City of Cordele*, 111 F.4th 1141, 1147 (11th Cir. 2024) (applying *Swierkiewicz* and *Iqbal* to conclude that the plaintiff's allegations "nudged [his] race-discrimination claims across the line from conceivable to plausible.") (citation and internal quotation marks removed). To sufficiently allege a Title VII discrimination claim, an employee "must show some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354–55 (2024). The adverse employment action "must have left [him] worse off, but need not have left [him] significantly so." *Id.* Under "the proper Title VII standard," a plaintiff need not demonstrate that the adverse employment action "caused 'significant' harm." *Id.* at 360.

The district court did not err in dismissing Mr. Shed's Title VII claim in Count IV because he failed to allege the required elements of a Title VII discrimination claim. In Count IV, Mr. Shed alleged that USF discriminated against him by failing to handle his internal complaints in a timely and proper manner. Yet he failed to allege that USF's failure to handle his internal complaints resulted in an adverse employment action—e.g., termination from the Ph.D program. Moreover, USF's alleged failure to timely address Mr. Shed's internal complaints did not result in a change in the terms, conditions, or privileges of his employment. *See Everson v. Coca-Cola*, 241 F. App'x 652, 653 (11th Cir. 2007) (per curiam)

(holding that "failure to respond to [plaintiff's] internal complaints" was not the "type[ ] of action[ ] that would have any 'material' affect on [plaintiff's] employment.").

Because Mr. Shed failed to allege an adverse employment action resulting from USF's alleged failure to timely address his internal complaints, he failed to plead a plausible claim of employment discrimination. Accordingly, we affirm as to this claim.

### III

We next address Mr. Shed's challenge to the district court's grant of Mr. Munkin's motion for judgement on the pleadings.

### A

We review an order granting a motion for judgment on the pleadings *de novo*. *See Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). "In determining whether a party is entitled to judgment on the pleadings, we accept as true all material facts alleged in the non-moving party's pleading," and then view "those facts in the light most favorable to the non-moving party." *Id.*

### B

Under our prior-panel precedent rule, a prior panel's holding is binding unless it has been overruled or abrogated by the Supreme Court or by our Court sitting *en banc*. *See Sabal Trail*

*Transmission, LLC v. 18.27 Acres of Land in Levy Cnty.*, 59 F.4th 1158, 1164 (11th Cir. 2023).  We have previously held that "[t]he right to be free from retaliation is clearly established as a [F]irst [A]mendment right and as a statutory right under Title VII; but no clearly established right exists under the equal protection clause to be free from retaliation." *Ratliff v. DeKalb Cnty.*, 62 F.3d 338, 340 (11th Cir. 1995) (emphasis removed).   "A pure or generic retaliation claim . . . simply does not implicate the Equal Protection Clause." *Watkins v. Bowden*, 105 F.3d 1344, 1354 (11th Cir. 1997) (per curiam).

The district court did not err in granting judgment on the pleadings on Mr. Shed's retaliation claim against Mr. Munkin in his individual capacity.  Even accepting as true all the facts Mr. Shed alleges, his claim that Mr. Munkin retaliated against him in violation of the Equal Protection Clause is not cognizable because "no clearly established right exists under the equal protection clause to be free from retaliation."  *Ratliff*, 62 F.3d at 340 (emphasis removed).  Therefore, Mr. Munkin was entitled to judgment as a matter of law.  To the extent that Mr. Shed asks us to reconsider our precedent, we are bound to it by our prior-panel precedent rule.  *See Sabal Trail Transmission, LLC*, 59 F.4th at 1164.

Accordingly, we affirm as to this claim.

## IV

We conclude by addressing Mr. Shed's challenge to the district court's grant of the defendants' bill of costs.

## A

We review a district court's decision regarding costs for abuse of discretion. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). Under the abuse-of-discretion standard, we will only reverse when the district court "made a clear error of judgment" or "applied the wrong legal standard." *Rance v. Rocksolid Granit USA, Inc.*, 583 F.3d 1284, 1286 (11th Cir. 2009) (quoting *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004) (en banc)).

Taxable costs include, among other things, court reporter and transcript fees necessarily obtained for use in the case, fees and disbursements for printing and witnesses, and fees for copies of papers necessarily obtained for use in the case. *See* 28 U.S.C. § 1920(2)–(4). *See also* Fed. R. Civ. P. 54(d)(1). "The presumption is in favor of awarding costs." *Arcadian Fertilizer, L.P. v. MPW Indus. Servs., Inc.*, 249 F.3d 1293, 1296 (11th Cir. 2001) (per curiam).

Costs may be taxed for the costs of depositions. *See* 28 U.S.C. § 1920(2) ("A judge . . . may tax as costs . . . [f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case . . . ."). *See also EEOC v. W&O, Inc.*, 213 F.3d 600, 620 (11th Cir. 2000). We have therefore held that "[a] district court may tax costs associated with the depositions submitted by the parties in support of their summary judgment motions." *W&O, Inc.*, 213 F.3d at 621 (citation and internal quotation marks omitted). Even where a deposition is not used by the prevailing party at summary judgment, the party challenging the cost award must show

that the "depositions were not related to an issue in the case when the depositions were taken." *Id.* at 622. However, costs are not recoverable "where the deposition costs were merely incurred for convenience, to aid in thorough preparation, or for purposes of investigation only." *Id.* at 620 (alteration removed) (citation and internal quotation marks omitted).

We have noted that "[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should . . . be resolved before discovery begins." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997) (footnote omitted). This is so because "[s]uch a dispute always presents a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true. Therefore, neither the parties nor the court have any need for discovery before the court rules on the motion." *Id.* (citation omitted).

The district court did not abuse its discretion in awarding the defendants the costs of Mr. Shed's deposition. The district court was permitted to award costs for the deposition even though the deposition was not later used because Mr. Shed's deposition was related to the issues of the case, namely his allegations of retaliation. The district court was also permitted to award costs for the deposition even though it took place before it ruled on the motion to dismiss because it took place during an agreed upon discovery period ordered by the district court, there was a long period of time between the filing of the original complaint and the operative

complaint, and neither party moved to stay discovery pending resolution of the motion to dismiss. Although the defendants' submission of the costs of the deposition does not detail how the amount was calculated, it is clear the cost was for one deposition. It was therefore reasonable for the district court to find that sufficient documentation existed.

Accordingly, we affirm as to this claim.

## V

We affirm the district court on all issues raised.

**AFFIRMED.**